Mangel & Company, an Illinois Corporation, Plaintiff-Appellant, v. Village of Wilmette, a Municipal Corporation, Defendants-Appellees.

Gen. No. 53,249.

First District, Fourth Division.

October 8, 1969.

Rehearing denied November 21, 1969.

ENGLISH, J., dissenting.

Austin L. Wyman, Sr. and Panter, Nelson & Bernfield, of Chicago (Irwin Panter and Marshall D. Krolick, of counsel), for appellant.

Robert J. Mangler, of Wilmette, for appellees.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Plaintiff, Mangel and Company, an Illinois Corporation, owner of certain real estate located in the Village of Wilmette, filed a declaratory judgment action against the Village, seeking a declaration that, the Village Zoning Ordinance, which classified the subject property in an R1 single-family residential category, was unconstitutional as applied to the subject property; and that plaintiff had the right to erect a 56-apartment building, a multiple-family use within the R4 residential category. On April 8, 1968, after a trial without a jury, the trial court found that the zoning ordinance was unconstitutional as applied to the subject property. The court further found that plaintiff's request to erect a 56-unit apartment building would be denied. Plaintiff appeals from the latter portion of that decree which denied it the right to erect the 56-unit building. Defendant has not filed a cross-appeal to that portion of the decree which held that R1 zoning was unconstitutional as applied to the subject property. In fact, defendant has filed a motion, asking that this court take judicial notice that the Village, after the entry of the decree by the trial court in the instant case, has passed an ordinance rezoning the subject property R3, a low density multiple-family type use. Consequently, in this court, the propriety of holding the R1 use unconstitutional as applied to this property is not an issue.

■ Certain owners of single-family residences abutting the instant property to the east were given leave to intervene in the suit; they filed a separate answer and participated in the trial. These intervenors have not filed an appearance or brief, and are in default in this court.

Subsequent to the presentation of evidence, but prior to the final decree of the trial court, plaintiff and defendant signed a stipulation and agreed that plaintiff be allowed to erect a 52-unit building on the property. When the stipulation was presented, the trial court, up-

386

on objection by the intervenors, denied plaintiff's motion for the entry of that order. Plaintiff's motion to amend its complaint and reopen proof so that evidence could be presented with respect to a specific plan for development of a B3 commercial use zoning category for the property was also denied by the trial court.

In its appeal, plaintiff contends that the trial court erred in leaving the property unzoned and in failing to frame its decree consistent with established principles; that the trial court's denial of permission to erect the 56-unit building was arbitrary and unreasonable; that the trial court erred in refusing to accept the stipulation between the plaintiff and defendant as to the use of the subject property for a 52-unit building; and that the trial court erred in refusing to allow plaintiff to amend its complaint and to reopen proof in order to present evidence as to a specific commercial use.

The subject property is located on the east side of Skokie Boulevard between New Glenview Road to the north and Old Glenview Road to the south. The western boundary of the property has a frontage of 432 feet on Skokie Boulevard, the eastern boundary is 400 feet, the northern boundary is 216 feet, and the southern boundary is 145 feet. The property is vacant and unimproved.

Directly south of the subject property is Mangel Florist, operated by plaintiff. Immediately east of the property is a residential development consisting of single-family residences. These homes are flush against the subject property with no alley between, and face Sunset Drive. Directly north is a vacant piece of land which runs to New Glenview Road and is zoned residential. North of New Glenview Road on Skokie Boulevard is a tract of land zoned R3 and developed with townhouses. North of the townhouses is a parking area. Directly east of the townhouses are single-family residences. Still further north at Wilmette Road are two service sta-

tions, vacant land and a drugstore. On the west side of Skokie Boulevard there is located a park, playground and a school. South of New Glenview Road is a single-family residential development with homes backed up to Skokie Boulevard, a Sinclair gas station, vacant land and a small development of stores. The southwest corner of Old Glenview Road, which is presently vacant except for an old home, runs down to the dividing line between defendant Village and the Village of Skokie. The property along the west side of Skokie Boulevard from the vacant land south has a strip commercial type of development. South of that is a major commercial development, and further down is the Old Orchard Shopping Center, containing a full complex of stores. Across the street from the shopping center on the east side of Skokie Boulevard is a cemetery. Starting from the northeast corner of Old Orchard Road and Skokie Boulevard, and coming north, there are various restaurants, a funeral home and a few other stores. To the east of these commercial enterprises, in Skokie, is an R4 area developed with condominiums and apartments.

Testimony as brought out at trial pertinent to the use of the property for a 56-unit apartment building was as follows:

John Mangel, II, testified that he was vice-president of Mangel and Company, plaintiff and owner of the property involved. The property was presently the subject matter of a contract with Ontario Contracting Company. Plaintiff was to sell the property to Ontario for the sum of $200,000 if successful in obtaining the necessary zoning to allow the erection of an apartment building. There are no R4 multiple dwellings in the immediate vicinity in Wilmette, but there are some nearby in the Village of Skokie.

Alan Friedman testified that he was secretary-treasurer of Ontario, and that he had negotiated the contract to buy this property. The R4 zoning requirements of the

defendant Village would allow one apartment unit for each 1,000 square feet of land space. The subject property contained about 71,000 square feet. Ontario originally had planned to build a 71-unit building, but in an effort to compromise with defendant, was planning to erect a 56-unit building. The building would be a four-story masonry and concrete building, consisting primarily of 2 and 3 bedroom units, with 112 parking spaces. Since the subject property was flush against the lot lines of individual homes on the east, with no alley, they planned to build a stockade fence on the east line to obstruct the visibility. There would be 4 entrances or exits from the property to Skokie Boulevard.

Ralph Martin, a realtor and appraiser, testified for plaintiff that the highest and best use of the land in question would be an R4 use, considering the location and shape of the property. An R4 use would not have an adverse effect on the surrounding properties. This property, based on an R4 development, would be worth $280,000. If zoned for an R3 use, the value of the property would be $96,000. If zoned R1, it would be worth $50,000. However an R3 use, a low density multiple-family use, would not be a desirable use for the property because more children would be living in the townhouses than in the proposed use. There is only one existing R4 development in Wilmette, several miles east of the property in question.

Ralph C. Campbell, a city planner and zoning consultant, testified for plaintiff that he was familiar with the area and the proposed use. R4 would be a proper use for the property because it is physically suited for such a use and would be compatible with adjacent uses. It would make a good transition between the commercial uses and the adjoining single-family residences. While R4 would have a detrimental effect on the adjacent single-family area, it would have less of an adverse effect than any of the proposed uses, other than R1.

389

An R3 use could be developed, but this would not be the highest and best use for the property. Maintenance by one owner under R4 would be better than maintenance by many owners under R3. An R3 use would call for apartment or townhouse uses that would be sold to individual families, more apt to have children, creating problems along Skokie Boulevard. Mr. Campbell stated that there was "no real true thing as spot zoning." If a use is in conformity with the land use pattern, then it is not spot zoning.

For the defense, John Scapin, a civil engineer and director of planning, zoning and building for defendant Village, testified that he was familiar with plaintiff's proposed construction. In his opinion, the proposed R4 use would have an adverse effect, and the best use would be an R3 development. There are no apartment buildings similar to the one proposed on Skokie Boulevard, and the only other R4 use in Wilmette is located several miles away near Lake Michigan. He was familiar with the proposed development at the time the matter was pending before the Village Zoning Board, and did not have an opinion as to its desirability at that time. The zoning board recommended to the Village Board that plaintiff's proposed R4 development be allowed.

Carl Gardner, a city planning and zoning consultant, testified that he had been retained by defendant some eight months before to prepare a long-range comprehensive plan and an analysis and recommendation for the use of property along Skokie Boulevard. The highest and best use of the subject property would be an R3 classification. The property in question consisted of 1¾ acres. He would recommend a low density multiple-family type use of 12 to 18 dwelling units per acre. These would be one or two story buildings. The redistricting of the subject property for R4 would not be a suitable use. The only R4 use permitted in Wilmette was an extensive lake front acreage suitable for such a develop-

ment. The particular needs of an R4 district would be an area of sufficient size to create a character of its own, and that it have accessibility from a major thoroughfare as well as extensive view, light and air. The subject property did not meet these necessary requirements. After his retention by defendant as a consultant he had made a report to the Village that an R4 classification would be the highest and best use of the property. Since then he had occasion to put in an intensive analysis of the entire situation along Skokie Boulevard. As a result he had adjusted his opinion. He now believed that the subject property did not meet the requirement of good R4 zoning.

Two of the intervenors, owners of adjacent single-family residences, testified that their homes abutted the subject property. They were familiar with the proposed development, and were of the opinion that it would depreciate the value of their property because of the noise and amount of traffic.

We believe that orderly procedure requires that we first consider plaintiff's contention that the trial court's denial of permission to erect a 56-unit apartment building was arbitrary and unreasonable.

■ We agree with plaintiff that the relevant test in determining the validity of existing zoning, that the zoning is presumed valid, is inapplicable to the question of whether plaintiff should be allowed its specific use after a finding that the zoning is unconstitutional. However, plaintiff does not meet its burden merely by proving that the ordinance is void as to the property in question. Plaintiff concedes that it also has the burden of proof of showing by a preponderance of evidence that its proposed use is reasonable. We find that plaintiff has failed to meet that burden.

■■ Where the testimony in a trial without a jury is contradictory, the weight to be given to that testimony is a matter for the trial court and its findings will not

be disturbed unless manifestly against the weight of the evidence. LaSalle National Bank of Chicago v. County of Cook, 12 Ill2d 40, 145 NE2d 65 (1957). In the case at bar, both sides presented testimony that the highest and best use for the property was multiple-family residential. The only point at issue between plaintiff and defendant was one of intensity or density of use. Two witnesses testified for plaintiff that the best and highest use for the property was an R4 category. It should be noted that neither witness for plaintiff stated that a 56-unit building was the optimum use under this category, but testified only that R4 was the most desirable use. For the defense, two witnesses testified that a less intense use of the property, an R3 category, was the highest and best use of the property. Under the conflicting testimony, the trial court could properly decide that a 56-unit building was an unreasonable use.

■ Carl Gardner, one of the experts testifying for the defense, had, some months prior to trial, made a report that R4 would be the highest and best use of the property. At trial he testified that an R3 use would be the highest and best use. As stated previously, the question of credibility is one for the trial court, and a change of opinion by a witness does not of necessity require a rejection of his testimony. In the instant case, Gardner offered a satisfactory explanation for his change of opinion. He testified that after a concentrated study of Skokie Boulevard, he came to the conclusion that such an intense use of the property as permitted under R4 would not be desirable, since the area was not of sufficient size to create a character of its own. In the exceedingly imprecise field of zoning, a change of opinion following deeper study is not unusual.

■ Furthermore, the trial court was not limited by the opinion of the experts. It was entitled to look to the use of nearby property to determine whether the pro-

posed development was reasonable. See Dixon v. County of Kane, 77 Ill App2d 338, 222 NE2d 354 (1966). And in the case at bar, the permitted uses of nearby property furnished strong additional evidence to support the trial court's finding.

There is only one R4 use permitted in the defendant Village, and that is located at Lake Michigan, several miles to the east of the subject property. Skokie Boulevard consists of single-family residences, a nearby townhouse development, and various commercial enterprises, large and small. Single-family residences abut the property to the east, and are located across the street to the west. While there is an R4 development nearby, located in the Village of Skokie, it is significant to note that R4 development is located east of commercial uses on Skokie Boulevard, and not on Skokie Boulevard itself. Thus, plaintiff's proposed use of the property would be of a far heavier density than other nearby uses, and would be incongruous with existing use.

■ While the testimony indicated that an R4 zoning would bring the highest financial return, that is only one factor to be considered in determining the reasonableness of a use. It should also be noted that while the property was worth $50,000 zoned R1, it would have a value of almost $100,000 under an R3 zoning.

■ We hold that the trial court as finder of the fact was entitled to find that the proposed use of 56 units was unreasonable; to find that such a use was not consistent with surrounding uses, and that it would have a harmful effect on the surrounding property. Its denial of the proposed use was not arbitrary and unreasonable.

Plaintiff also contends that the trial court committed reversible error in leaving the property unzoned, and in not framing its decree with reference to the record before it, and particularly with reference to the evidence offered at trial, relying on Sinclair Pipe Line Co. v.

Village of Richton Park, 19 Ill2d 370, 167 NE2d 406 (1960).

In the Sinclair case, plaintiff petitioned the zoning board to rezone its property from single-family residential to light industrial. The trial court reversed the zoning board's denial of that request, found the residential zoning unconstitutional as it applied to the property, and found that the plaintiff could erect the tanks for the storage and transportation of crude oil. The area in which the property was located was generally industrial, and included an airport and a lumberyard. All of the evidence indicated that the highest and best use for the subject property would be light industrial, and the defendants presented no contradictory evidence. The Supreme Court affirmed, and held that, after finding an existing zoning ordinance void as to a piece of property, the trial court should frame its order in reference to a specific proposal before it and find that the contemplated use would be a reasonable one. See also Fiore v. City of Highland Park, 76 Ill App2d 62, 221 NE2d 323 (1966).

However, it has been repeatedly held that the Sinclair case did not give the trial court unlimited authority to rezone the properties involved in zoning litigation.

In Bredberg v. City of Wheaton, 24 Ill2d 612, 182 NE 2d 742 (1962), the Supreme Court stated at page 624:

"We may say at once that nothing in our decisions in Sinclair Pipe Line Co. v. Village of Richton Park, 19 Ill2d 370, and Illinois National Bank & Trust Co. v. County of Winnebago, 19 Ill2d 487 was intended to permit a trial court to constitute itself as a zoning authority . . . . The problem of these cases was the decree induced by evidence which depicted a proposed use in a highly favorable light and the possibility that a decree of general invalidity might thereafter permit the owner to use the property for an entirely different purpose."

See also Reeve v. Village of Glenview, 29 Ill2d 611, 195 NE2d 188 (1963).

In Harshman v. City of DeKalb, 64 Ill App2d 347, 212 NE2d 146 (1965), the court, at p 353, stated:

> "The aim of these decisions is to avoid the possibility of a rezoning of the property to some other undesirable classification and, thus, invite further litigation, and to prevent any exploitation by the owner of the fact that his property is, at least temporarily, unzoned. To those ends, the wisdom of these decisions seems clear.
>
> "It is also apparent that the courts must exercise this authority with extreme care to avoid any encroachment into the legislative function of zoning. It is imperative that there be clear evidence before the court of the specific use to which the owner intends to develop his property and the order framed in reference to it."

In the light of these cases, it is clear that the courts recognize that zoning remains a legislative function. The trial court is not to perform as a zoning board, but may, at most, allow a specific use upon which a petitioner is relying. The Sinclair case does not compel the trial court to allow a proposed specific use. In fact, the Supreme Court stated that the trial court should reach its decision "in terms of the reasonableness of excluding that specific use." Sinclair, supra, at p 378. As we have noted, the trial court in the instant case was justified in finding that plaintiff's proposed use of the property for a 56-unit apartment building was unreasonable. Consequently, the trial court did not err in leaving the property unzoned.

Plaintiff next argues that the trial court was obliged to honor the stipulation between plaintiff and defendant, and that it committed reversible error in refusing to do

so. The proposed stipulation was a compromise, and would have allowed plaintiff to construct a 52-unit apartment building. Upon the objection of the intervenors, the trial court refused to allow the stipulation.

It is conceded that a stipulation, to be effective, must be accepted by all parties to a suit. It is also conceded that an intervenor is a proper party, but plaintiff argues that the acceptance of the compromise by the defendant constituted an official act on its part; that a presumption of validity attached to it, and this presumption of validity had to be rebutted by the intervenors. We do not agree.

We do not believe that an effort to reach a compromise or settlement by a municipality can be considered an official act, or binding upon the municipality. The law encourages parties to settle cases in which they are involved. Knoll v. Swanson, 92 Ill App2d 398, 234 NE2d 543 (1968). This is as true of municipalities as of private parties. Were we to accept plaintiff's argument, municipalities would be unable to attempt to negotiate a settlement of claims or lawsuits in which they were involved, lest their offers would be construed as official acts and permanently binding against them. The legislative process is the product of advice, deliberation and quite often, compromise, and attempts at compromise should be encouraged. The fact that the intervenors are in default in this court is irrelevant to the issue of the propriety of the trial court's rejection of the proposed stipulation. After the trial court rejected the agreement upon the objection of the intervenors, the defendant Village was entitled to, and has in fact, resumed its defense against the plaintiff's proposed development in the trial court and in this court. Defendant has also passed an ordinance rezoning the subject property as R3. It had not been permanently bound by its attempt to compromise the dispute, nor was it being inconsistent in the resumption of its defense.

We find that it was not error for the trial court, upon the objection of one of the parties, to reject the proposed stipulation.

Plaintiff also argues that the trial court erred in refusing to allow plaintiff to amend its complaint and to reopen proof to present evidence as to a specific commercial use.

■ The right to allow amendment is within the sound discretion of the trial court. The Civil Practice Act, Ill Rev Stats 1967, c 110, § 46, allows amendment before final judgment "on just and reasonable terms."

■ The trial court did not abuse its discretion in this regard. All of the evidence presented to the court concerned itself with a multiple-family residential use. The issue was the amount of density of that type of use. Then after closing its proof, plaintiff sought to present evidence on a totally different category, a specific commercial use. Plaintiff had never requested such a use from the Village. If the trial court had allowed such a reopening of proof it would have usurped the legislative process, and would have improperly constituted itself as a zoning authority. Bredberg v. City of Wheaton, 24 Ill2d 612, 182 NE2d 742 (1962). The trial court's denial of plaintiff's request was proper.

Finally, defendant has filed a motion, requesting that this court take judicial notice of the fact that it has passed an ordinance rezoning the subject property as R3. This motion was taken under advisement with the case.

■ Since we have found that the trial court acted correctly in leaving the property unzoned, the action of the Village in reclassifying the property was not improper, and we take judicial notice that the property has been rezoned under an R3 category.

Decree affirmed.

STAMOS, J., concurs.

ENGLISH, J., dissents.