2 Ill. App.3d 1082 (1971)
278 N.E.2d 533
THE FIRST NATIONAL BANK OF LAKE FOREST, Plaintiff-Appellee,
v.
THE VILLAGE OF NORTHBROOK, Defendant-Appellant.
No. 54608.
Illinois Appellate Court  First District.
November 23, 1971.
Rehearing denied January 5, 1972.
*1083 Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, of Chicago, (Frederic O. Floberg, R. Martin Smith and Paul J. Galanti, of counsel,) for appellant.
John M. Daley and Jack M. Siegel, both of Chicago, for appellee.
Affirmed, and reversed in part and remanded.
Mr. PRESIDING JUSTICE LEIGHTON delivered the opinion of the court:
This is a zoning case. Plaintiff, First National Bank of Lake Forest, as Trustee, sued the defendant Village of Northbrook, seeking a declaration that the Northbrook Zoning Ordinance was unconstitutional and void, insofar as it prohibited development of a multiple-family dwelling project on plaintiff's land. In addition, plaintiff asked for mandatory and prohibitory injunctive relief. Defendant appeared and filed an answer *1084 which denied the material allegations of plaintiff's complaint.[1] Thereafter, the cause was heard without a jury. Twelve witnesses testified: eight for the plaintiff and four for defendant, all knowledgeable and some expert in municipal planning, engineering and zoning. Fifty-three exhibits were admitted, 28 for plaintiff (including the plans for a proposed multi-family project) and 25 for defendant.
This evidence discloses that Dundee Road, also known as State Route 68, is a heavily traveled suburban street from Edens Highway west into the Village of Northbrook. Plaintiff's land consists of approximately five acres, vacant, rectangular in shape, its southern frontage abutting the north side of Dundee Road, west of the Northbrook Water Filtration Plant which in turn is west of the Chicago and North Western Railroad freight tracks. The land is 165 feet wide east to west, and 1,320 feet south to north. West of it, and adjoining, are three single-family residences. North of the residences, and to the west, is the Green Acres Country Club. On the south side of Dundee Road, across from the subject property and proceeding west, is a forest preserve; its eastern boundary is the Chicago and North Western Railroad freight tracks. East of the tracks, south of Dundee Road, is a town house development, the Colonnades, with 64 attached, single-family residences.
On December 19, 1964, the Trustees of the Village of Northbrook adopted "[a]n Ordinance establishing comprehensive zoning controls and regulations for the Village * * *." Article VIII regulated residence districts, and after defining general and district requirements, it zoned the Village into five single-family residence districts, R-1 to R-5 inclusive, classifications in which multiple-family dwellings were prohibited. Defendant's comprehensive zoning plan restricted multiple-family structures to the central part or core of the Village. Multiple-family dwellings were permissible only in the two remaining zoning classifications in Article VIII, R-6 and R-7. The land held by plaintiff in trust was zoned R-2.
On December 19, 1967, Mrs. Leone M. Schmidt, then owner of the subject real estate, petitioned the Northbrook Plan Commission to rezone the land from R-2 to R-6 so as to permit its development as a multi-family project consisting of 70 condominium units. At the hearings, one of Mrs. *1085 Schmidt's spokesmen was Gregory Prena, who was described as a general contractor and real estate developer. After notice and hearings, the Plan Commission recommended to the Village Board that the Schmidt petition be denied. On February 6, 1968, the Board concurred in the recommendation. On June 13, 1968, Leone M. Schmidt, by warranty deed, conveyed the real estate to the plaintiff with Gregory Prena the sole beneficiary of the trust which holds title to the property. It was on behalf of Gregory Prena that plaintiff filed this suit.
In the trial of the cause, plaintiff's witnesses who knew the land in question, testified that defendants R-2 single-family classification was not the highest and best use for the property. Although neither Gregory Prena nor plaintiff ever tried to sell the subject land as single-family lots or sought to develop it for single-family homes, those who knew its location, size and surrounding uses, testified that economically, it was best suited for a multiple-family project. With one exception, all of plaintiff's witnesses who were asked testified that the highest and best use for the property was its development as a multiple-family housing complex. The exception was an expert in city planning, who described the R-2 to R-5 zoning classifications of defendant's zoning ordinance. He said that under R-2, plaintiff's property could produce seven conforming lots. R-3 would produce 10 lots. Under R-4 there could be 15 or 16 family lots; and under R-5, as many as 20 lots. Although he was plaintiff's witness, he was of the opinion that the best zoning classification for plaintiff's property was defendant's R-4. Later, as a witness for the defendant, he reiterated and expanded on this opinion. Another defense witness supported this view. After defendant rested its case, no evidence was offered in rebuttal. Thereafter, the trial court entered a judgment which found that the highest and best use for plaintiff's property was its development as a multiple-family dwelling complex of the type and character which plaintiff proposed; and that as applied to plaintiff's land, insofar as it prevented its use for multiple-family units, the Northbrook Zoning Ordinance was unconstitutional and void. The court declared that plaintiff and those claiming by, through or under it, were entitled to use the subject property for a multiple-family dwelling development "[i]n substantial compliance with the plans submitted in evidence in this cause." Defendant Village of Northbrook, its agents, servants and employees were enjoined from enforcing the provisions of the ordinance and were directed to issue to plaintiff, on proper application, all necessary permits and licenses for the erection of the proposed multiple-family dwelling project. The issue in this appeal is whether the evidence sustains the trial court's declaratory judgment and its mandatory and prohibitory injunction.
Defendant concedes that as applied to plaintiff's property, its R-2 *1086 zoning is unconstitutional. Consequently, in this court, the constitutionality of the R-2 zoning classification is not in issue. (See Mangel & Company v. Village of Wilmette, 115 Ill. App.2d 383, 386, 253 N.E.2d 9.) In issue, however, is the scope of the trial court's judgment, including the injunction. Defendant contends that plaintiff did not prove the Village was arbitrary and unreasonable in refusing to rezone the subject real estate so it could be developed by a multi-family dwelling project; and that plaintiff did not prove its proposed use of land was reasonable. Furthermore, defendant contends it was error for the trial court to prevent application to plaintiff's property of the R-3, R-4 and R-5 single-family zoning restrictions of the Northbrook Zoning Ordinance. For these reasons, defendant argues, plaintiff was not entitled to the relief granted by the trial court.
To meet these contentions, plaintiff argues that, measured by standards applied in zoning cases, its evidence sustained the full scope of the declaratory judgment and the mandatory and prohibitory injunction that was issued. Plaintiff insists that the surrounding land uses which defendant has permitted near the subject property (the golf course to the west and north; the water filtration plant to the east; the Colonnades with its 64 family units to the southeast) support the trial court's declaratory judgment. Plaintiff argues that the subject land is unsuitable for single-family purposes; that its vacant condition reveals the unreasonable character of defendant's single-family zoning; and that the diminution in property value which plaintiff will suffer as a result of defendant's zoning restrictions (from $105,000 as a multiple-family housing project to no value, if restricted to single-family homes under defendant's R-2 zoning classification) is too great when compared with its supposed benefit to the community's health, safety and welfare.
It is obvious that the trial court did more than declare defendant's R-2 zoning classification unconstitutional. It declared unconstitutional the entire zoning ordinance of the Village of Northbrook, as it applied to plaintiff's property, "[i]nsofar as it prevents the use of the subject property for a multiple-family dwelling development as proposed by the plaintiff, consisting of two (2) buildings on the site, with a height of thirty-five (35) feet, containing thirty-six (36) two-bedroom units and thirty-four (34) three-bederoom units, totalling approximately One Hundred Five Thousand (105,000) square feet in floor area, to be serviced by private driveways to Dundee Road, * * *," Included in this declaration of unconstitutionality were defendant's R-3, R-4 and R-5 zoning classifications. Further, the court enjoined the defendant, Village of Northbrook, its agents, servants and employees "[f]rom enforcing the provisions of the zoning ordinance of the Village of Northbrook, insofar *1087 as said ordinance prevents the use of the subject property as aforesaid * * *." Finally, the court mandated the defendant Village issue to the plaintiff on proper application "[a]ll necessary permits and licenses for the erection of a multiple-family dwelling development in the manner herein provided, and that [Village, its agents, servants, employees] be further enjoined from interfering with the plaintiff, and all persons claiming by, through and under it, from utilizing the subject property as hereinabove decreed to be their right."
 1-7 One who asserts that a zoning ordinance is arbitrary and unreasonable as applied to a particular property, must prove by clear and affirmative evidence that the ordinance constitutes an arbitrary, capricious and unreasonable municipal action; that there is no permissible interpretation which justified its adoption; or that it will not promote the safety and general welfare of the public. (First National Bank of Lake Forest v. County of Lake, 7 Ill.2d 213, 225, 130 N.E.2d 267.) Where, as in this case, plaintiff proposes a particular use for land which is the subject of a zoning controversy, it has the burden of proving that the use is reasonable. (See Mangel & Company v. Village of Wilmette, supra.) In a zoning context, use of land is reasonable when it is consistent with public health, safety, morals and welfare. (See Bohan v. Village of Riverside, 9 Ill.2d 561, 138 N.E.2d 487.) Generally, the most a court may do after declaring that a zoning ordinance is void as applied to a particular property is to find that the proposed use is reasonable and may be permitted. (Fiore v. City of Highland Park, 76 Ill. App.2d 62, 76, 221 N.E.2d 323.) In making this determination, a trial court must exercise extreme care to avoid encroaching on legislative functions relating to zoning which, under our form of government, are delegated to municipal authorities. (Harshman v. City of DeKalb, 64 Ill. App.2d 347, 212 N.E.2d 146.) With this kind of care, the court may frame its judgment according to the evidence with reference to the proposed use; and it may find that the contemplated use is reasonable. When this is done, a court's judgment neither impinges on the legislative function nor leaves the property unzoned. It limits plaintiff's use of the land to that contemplated and supported by the record. (Sinclair Pipe Line Co. v. Richton Park, 19 Ill.2d 370, 167 N.E.2d 406; Fiore v. City of Highland Park, supra.) With these principles in mind, we turn to the case before us.
 8, 9 Between its R-2 classification, within which was plaintiff's property, and R-6, which would permit the multiple-family project, the Northbrook Zoning Ordinance has three intervening single-family zoning classifications. Although evidence in this record proves that defendant's R-2 zoning use is unconstitutional, it does not establish by the requisite degree of proof that all of defendant's intervening single-family classification, *1088 if applied to plaintiff's property, are, to use the words of the trial court, "[u]nreasonable, arbitrary, confiscatory, unconstitutional and void. * * *." (See Chicago & N.W. Ry. Co. v. City of Des Plaines, 97 Ill. App.2d 201, 240 N.E.2d 280.) Indeed, a planning and zoning consultant who testified for plaintiff gave his opinion that plaintiff's property could be used for single-family construction under defendant's R-3, R-4 or R-5 zoning classification. Therefore, the evidence in this record gives rise to a question whether defendant's R-3, R-4 or R-5 zoning would be the reasonable zoning classification for plaintiff's property. This being so, the question should be answered by the Village Board of Northbrook, not by the trial court. (Liberty National Bank of Chicago v. City of Chicago, 10 Ill.2d 137, 145-46, 139 N.E.2d 235.) Determination of proper zoning classifications is a function of the defendant municipality. It is neither the province nor the duty of the courts to interfere with the discretion with which municipal authorities are vested, unless the evidence shows clearly and convincingly that their action is unrelated to the public health, safety and morals of the community. Treadway v. City of Rockford, 24 Ill.2d 488, 493-94, 182 N.E.2d 219.
 10 Moreover, we are convinced that plaintiff did not prove its proposed use of the subject land was reasonable, as we have defined this zoning concept. (Bohan v. Village of Riverside, supra.) In fact, plaintiff's evidence shows otherwise. Plaintiff's planning and zoning consultant candidly admitted that the proposed multiple-family project would have an adverse effect on the adjoining single-family residence. With one exception, no witness for the plaintiff testified concerning the reasonableness of the proposed use. The exception was defendant's expert in city planning, who was called as a witness by plaintiff and who gave his opinion that the best way to develop plaintiff's property was under defendant's R-4 zoning classification. When this witness later testified for defendant, he detailed the modes by which plaintiff's property could be developed under the R-3, R-4 and R-5 zoning classifications. He supported his testimony with sketches, exhibits and cost estimates. He agreed, in conformity with plaintiff's theory, that under defendant's R-2 zoning, plaintiff's property could not be put to its highest and best use. He insisted, however, that the highest and best use for development of plaintiff's property was defendant's less restrictive R-4 single-family zoning regulations. This opinion was supported by the testimony of a real estate broker who had dealt in the Northbrook area real estate for six and a half years, primarily in residential properties. The broker was of the opinion that a single-family house on plaintiff's land, zoned R-4, could sell for $65,000 to $70,000. If plaintiff's land were zoned R-3, the broker thought a home could be sold for $75,000 to $80,000. It is true that one of plaintiff's *1089 witnesses was of a contrary view. This fact, however, does not detract from the corroborative effect the broker's testimony had on that of the expert in city planning.
In addition to the testimony of these witnesses, the Green Acres Country Club called the owner of a single-family residence west of plaintiff's property. This witness had lived in the area since 1962. He knew the land involved and he described the single-family characteristics of the surrounding uses. He said that plaintiff's proposed use of its land was unreasonable because a multiple-family project would be totally inconsistent with the character of the neighborhood as it had developed under defendant's comprehensive zoning. Plaintiff did not rebut the testimony of these witnesses. The trial court did not make any finding of fact nor reach any conclusion concerning the reasonableness of plaintiff's proposed use of its land. This should have been done. See La Salle National Bank v. City of Chicago (Ill. App.2d), 264 N.E.2d 799.
Instead, the trial court declared that plaintiff and all persons claiming by, through and under it, had the right, without interference by defendant, Village of Northbrook, its agents, servants and employees, to use its real estate for a multiple-family dwelling development in substantial compliance with the plans in evidence. In effect, the trial court imposed on an area heretofore zoned R-2 single-family, defendant's R-6 general residence district classification which permits a multiple-family housing complex of the kind plaintiff proposed for its property. This imposition encroached on the legislative functions relating to zoning which are delegated to the defendant, Village of Northbrook. Harshman v. City of DeKalb, supra.
 11 This being the case, the mandatory and prohibitory injunction granted plaintiff by the trial court was not justified. It is generally said that a mandatory injunction is an extraordinary remedial process granted only in cases of great necessity. (Lyle v. City of Chicago, 357 Ill. 41, 191 N.E. 255; Malchow v. Tiarks, 122 Ill. App.2d 304, 258 N.E.2d 811.) Plaintiff's evidence did not establish a case that warranted the injunctive relief granted by the trial court.
For these reasons, we affirm only the trial court's declaration that as applied to plaintiff's property defendant's R-2 zoning classification is unconstitutional. In all other respects, the judgment and the mandatory and prohibitory injunction are reversed. This cause is remanded with directions that the trial court retain jurisdiction of the subject matter and of the parties to permit defendant, Village of Northbrook, either on plaintiff's application or on its own initiative, to rezone plaintiff's property under any provision of the Northbrook Zoning Ordinance which the municipal authorities in their discretion shall determine. If after the *1090 Village of Northbrook has acted and plaintiff, or any party in interest, desires to assert that the Northbrook Zoning Ordinance, as thus applied to the subject property, is arbitrary, unreasonable, or in any manner unconstitutional, the trial court may allow amendment of pleadings as may be necessary to put in issue the constitutional questions, or others which the parties may present to the court. Thereafter, the trial court may enter judgment not inconsistent with the views expressed in this opinion.
Affirmed in part, reversed in part, and remanded with directions.
SCHWARTZ and BURMAN, JJ., concur.
NOTES
[1] Green Acres Country Club, a not-for-profit corporation, owner of land which adjoins part of the subject property, petitioned and was granted leave to intervene as a party defendant. It filed an answer identical with the one filed by the Village of Northbrook. At the trial, it called one witness. After judgment was entered, it filed a notice of appeal to this court identical with the one filed by the Village. After the cause was docketed, it asked leave to adopt the brief and argument of defendant, Village of Northbrook. We allowed the motion. Therefore, in this opinion, when reference is made to defendant, Village of Northbrook, we mean to include the intervenor defendant-appellant, Green Acres Country Club.