BESSIE PEMBROOK, Plaintiff-Appellee, Cross-Appellant, *v.* THE CITY OF PARK CITY, Defendant-Appellant, Cross-Appellee.

(No. 74-322; )

Second District (2nd Division)—November 13, 1975.

Eugene M. Snarsk`, of Waukegan, for appellant.

Hercules Paul Zagoras, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Defendant, City of Park City ("Park City"), appeals from judgment entered in June, 1974, by the circuit court of Lake County declaring Park City's 1960 zoning ordinance and amendments thereto unconstitutional and void as to plaintiff's property and enjoining the mayor and the c'ty council and other officers of Park Ci'y from interfering with the development by plaint.ff of the property as a B-Apartment District for 14 apartment units. Park City contends that (1) plaintiff failed to exhaust her administrative remedies, (2) an ealier judgment ('from which Park City took no appeal) requiring plaintiff to file another pet tion for rezoning was erroneous, and (3) pla'ntiff failed to establish that B-Apartment District zoning was reasonable as to her property. Plaintiff, Bessie Pembrook, cross-appeals from that part of the judgment which restricts her use of the property to 14 apartment units on the court's finding that a statement by her counsel at the hearing before Park City's Zoning Board of Appeals ("Zoning Board") that he would have no objection to accepting 14 units constituted an amendment of plaintiff's proposed use of the property for 16 units. Plaintiff argues that any statement by her counsel as to plaintiff's willingness to accept a reduction to 14 apartment units was only intended for settlement purposes, and s'nce no settlement resulted plaintiff was not bound.

Plaintiff's complaint for declaratory judgment, filed in June, 1970, alleged the ownership by her of a parcel consisting of two adjoining lots measuring in all 240 feet by 127.15 feet. One of the lots is improved with a single-family residence and the other is vacant. She asked in Count I that Park City's 1960 Zoning Ordinance, as amended, which zoned her parcel "A-Single Family Residential" be declared unconstitutional and void and that the said parcel be declared "unzoned"; in Count III she

asked that her parcel be declared zoned as "Apartment, Multi-Family and Mobile Home District".[1]

The material facts are not controverted. The record at the hearing in September, 1972, before the trial court discloses that in May, 1969, plaintiff filed her initial petition for rezoning with Park City's Zoning Board. The minutes of the Zoning Board's meeting of July 14, 1969, state that plaintiff "requested a change from 'A' Single Family to 'B' Apartment House District," and that no objection was made thereto; [2] that after discussion and vote the Zoning Board recommended approval of the rezoning. However, in November, 1969, the City Council denied the rezoning. The mayor of Park City, Mr. Scheeler, testified that Park City's population was about 3,000, that the bulk of the population lived in something other than single-family homes (i.e., mobile homes and apartment units) and that there are only about 30 single-family homes scattered all over the city. The mayor and his partner (an alderman) own a mobile home park in which about 400 people reside. Another mobile home area (Gino's) is owned by the Palmieri brothers, both of whom were aldermen (one of whom was chairman of the Zoning Board in 1969 and 1974). This mobile home area housed between 300 to 400 people. Murphy's Trailer Court housed another 700 people.

While there are no apartments in the block where plaintiff's premises are located there are 348 apartment units within 800 feet thereof. Within 1,000 feet there are various commercial uses and a motel. Across the street from plaintiff's property is a mobile home park with 80 mobile homes, and additional mobile home spaces are being constructed in the block just south and west of plaintiff's parcel. Two homes are located north of plaintiff's property in the same block.

In 1963 Block 30, located one block west of plaintiff's parcel, was rezoned by Park City to B-Apartment District from A-Single Family District; it has since been improved accordingly with 320 apartment units being located there. In 1966, one lot in the block across the street from plaintiff's property, and all of another block west and south of it, were rezoned to C-Mobile Home Park District from Single Family. In 1967 another large parcel, including the block only a short distance (about

---

[1] The record does not reveal what disposition, if any, was made of Count II which sought damages against the City and one Gene Palmieri. It does disclose, however, that defendant Palmieri died on August 17, 1971.

[2] In plaintiff's petition for rezoning dated June 23, 1969, she asks that her property "be reclassified to permit" its use "as a two-family dwelling, with the appropriate zoning classification".

one-half block) from plaintiff's property, was rezoned to C-Mobile Homes.

Plaintiff's real estate expert, Mr. Spose, characterized Park City "as either being a mobile home center or mobile home site or mobile home site city with supplemental apartments." He testified that the highest and best use of plaintiff's property was either for mobile home sites or apartments, and that the aggregate value of the property as presently zoned was $25,000, while if rezoned for its highest and best use, its fair market value would be $45,000. In his opinion the surrounding uses do not enhance the value of the plaintiff's property for single-family use. Mr. Spose further testified that the total square footage of about 30,500 square feet of the subject property would serve 20 apartments and about "14, 16 mobile home sites."

. Park City's expert in city planning, Mr. Drummond, testified that from a professional planner's point of view, the "best use" of plaintiff's property would be for "a mobile home park similar to the mobile home development in the immediate vicinity and in general at a density from 6 to 10 mobile units per acre exclusive of streets. * * * Other types of residential development at approximately the same density I feel would be equally appropriate."[3] Mr. Drummond further testified that, under Park City's Zoning Ordinance, he believed 29 apartment units would be permitted in B-Apartment District on the subject property. He acknowledged that there is no trend in Park City of development to single-family sites, and that the existing density of mobile home development is greater than 6 to 10 units per acre.

Proofs were closed in November, 1972. On February 22, 1974, the trial court entered judgment, finding that the highest and best use of plaintiff's property is for multiple-unit residential development and ruling that Park City's 1960 zoning ordinance, as amended, zoning plaintiff's property A-Residence District, was unconstitutional and void; it ordered that plaintiff file forthwith her petition for rezoning with Park City, and that Park City "hold hearings thereon within a reasonable period of time in accordance with its ordinance." Although the order found there was "no just reason for delay and for appeal," no appeal was taken from that judgment.

By stipulation of the parties, the transcript of the hearing on March 28, 1974, before the Zoning Board on plaintiff's petition for rezoning,

---

[3] On cross-examination Mr. Drummond acknowledged that his opinion was not as to the "highest and best use", as that term is commonly used by developers, lenders and brokers.

and the Zon'ng Board's finding and recommendations thereon were received in evidence and the proofs were closed.[4]

The Zoning Board's recommendations set forth that pla'ntiff filed her petition for rezoning and "proposed to construct 16 apartment units [in a B-Apartment District] covering a ground area of 5,400 square feet being 2-½ stories in height and that each unit would consist of 900 square feet of living space per unit"; that two parking spaces per apartment un t would be provided; that petitioner's attorney in "closing argument agreed that petitioner would accept less than 16 units, in other words, 14 units for the s'te in question" and that "it would be to the best interests of" Park City "and the surround'ng area to zone said property to a multiple use but not to the maximum * * * permitted under the Ordinance but to limit the same to 12 un'ts * * *." The Ci'y Council of Park City voted to deny the Zoning Board's recommendation and rezoned it for a duplex apartment.

At the hearing on March 28, 1974, before the Zoning Board, Ros'ta Tuller, a real estate broker, testified that the highest and best use of plaintiff's property was for an apartment building of 16 apartment units; that of the 30,516 square feet of its area, only 5,400 square feet would be taken up by the apartment building of two and one-half stories in height, allowing 900 square feet per unit; that the building would have four un'ts on the (sub) ground floor and six units on the first and second floors; that this would leave 25,000 square feet of open space of which 8,000 square feet would be for park'ng area (32 spaces of 250 square feet each) and about 17 000 feet for parkway and landscaping; that Park City's zoning ord'nance allows for only four mobile home parks; that there are four mobile home parks already in operat'on and plaintiff's parcel is not large enough, although its use as a mobile home park would not be incompatible with the surround'ng area. There were no objections at the hearing, other than from Mr. Eugene Palmieri, Chairman of the Zoning Board and himself the part owner of one of Park City's mobile home areas, who designated h'mself as an "ob'ector."

On June 21, 1974, the trial court entered the judgment which is the subject of this appeal and cross-appeal. The trial court found that Park City's den'al of the Zoning Board's recommendation was arbitrary and confiscatory and constituted the taking of the plaintiff's property contrary to the constitutions of Illinois and the Un'ted States; that plaintiff's counsel's statement that plaintiff would have no obj'ection to accepting 14 units constituted an amendment of plaintiff's proposed use. Accordingly, the court held that Park City's 1960 Zoning Ordinance, as amended,

---

[4] It was also stipulated that Eugene Palmieri (President of the Zoning Board) took part in three votes affecting plaintiff's application for rezoning.

was unconstitutional and void as to plaintiff's property and enjoined Park City's mayor, City Council and its various officers from interfering with the use and development of plaintiff's property for B-Apartment District with 14 apartment units.

■■ Park City argues first that plaintiff failed to exhaust her administrative remedies because prior to filing her suit for declaratory judgment in June of 1970 her only request to Park City was for "Duplex Zoning." As set forth above, it would appear from the record that plaintiff either filed two petitions with Park C ty's Zoning Board, one for a B-Apartment House District and another only for a "two family dwelling," or that the Zoning Board cons:dered the petition for a "two family dwelling" as being equivalent to a request for a rezoning to a B-Apartment House Distr'ct classifi₂ation. In any case, Park City now argues that the "duplex zoning" having been denied, the trial court should have dismissed plaintiff's compla:nt, presumably instead of entering its order of February 22, 1974, declaring the residential zoning void and direct'ng plaintiff to refile for zoning and ordering Park City to hold a hearing on plaintiff's further petition. It should be emphasized that Park City did not appeal from that order and 's therefore in no position to challenge it. We are, however, constrained to note in passing that at the hearing before the Zoning Board, Park City's counsel did not contradict the statement of plaintiff's counsel that, when the latter asked the trial judge to rezone plaint:ff's property, Park City's counsel "urged him not to rezone the property but to refer the case to [Park City's] Zoning Board * * * and let this Board g've notice to the public to see if there are any objections and take all those factors into consideration * * *." See also *First National Bank v. Village of Northbrook*, 2 Ill.App.3d 1082, 1087, relied on by Park City.

Park City's second conten'ion challeng'ng the propriety of the judgment entered in February of 1974 is without merit for the same reason. Park City did not appeal therefrom and is not in a position to attack it on this appeal. Section 57.1(3) of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 57.1(3).) permits a party to pet'tion for such further relief as may be appropriate after the declaration of rights, although not previously prayed for. (See *Burgard v. Mascoutah Lumber Co.*, 6 Ill.App 2d 210, 219.) In *County of Lake v. MacNeal*, 24 Ill.2d 253, 259-60, the court stated:

> "[Z]oning is legislative and administrative in nature, not judicial, and * * * is aimed at provid'ng the local authority an opportunity to correct error and to settle disputes locally before there is judicial intervention.
>
> * * *

To compel a property owner to first seek local relief in the face of the demonstrated attitude of the local authority, would be a patently useless step which would increase costs, promote circuity of action and delay the administration of justice."

See also *Van Laten v. City of Chicago*, 28 Ill.2d 157, 159.

■■ Park City next contends that plaintiff failed to establish the reasonableness of zoning her property B-Apartment District. Our review of the entire record, including the transcript of the hearing in March, 1974, before Park City's Zoning Board, makes it clear that B-Apartment District zoning is reasonable and proper. We do not, and need not, accept Park City's premise which attempts to equate mobile home parks with single-family residences. Plaintiff's property was zoned A-Single Family Residential, not C-Mobile Home Parks. Park City offered no evidence to oppose the propriety of apartment zoning for plaintiff's property and none whatever as to the propriety of zoning it A-Single Family Residential.

■■ Finally, we consider plaintiff's contention on her cross-appeal that the trial court's restriction to 14 apartment units (from 16) of plaintiff's proposed apartment use was based on an erroneous interpretation of the statement of plaintiff's counsel at the hearing before the Zoning Board as an amendment of her petition. The substance of the relevant colloquy before the Zoning Board is as follows:

"Mr. Snarski [Park City's counsel]: Would you have any objection to a lesser limitation [than 16 units]?

Mr. Zagoras [Plaintiff's counsel]: Well, of course, that's up to Mrs. Pembrook, but it is my feeling that 16 would not be too intense because your ordinance says 42 families per acre and she has 30,000. I think that would come out to 30 units, but 30 units might be too intense a use. There might not be enough open space. Certainly, the apartments to the west present an appearance of covering probable 50% of the land. She doesn't want to cover 50% of the land, but I think 16 is reasonable. It depends, if you are talking about 15, no we have no objection. If you are talking about 14, I suppose we would have no objection because our testimony at the trial was 14 to 16 but if you are talking about less than that, I don't know, what would your opinion be, Mrs. Pembrook? Anything less than 14 you wouldn't go along with?"

Plaintiff contends that at most counsel's statement was a settlement offer and not having been accepted, it is not binding. Her contention is not supported by the statement of counsel. He said categorically, "If you

are talking about 14, * * * we would have no objection because our testimony at the trial was 14 to 16." Clearly that is an unambiguous declaration that 14 apartment units would be acceptable to the plaintiff. The Zoning Board so construed it, so did the trial court, and so do we.

For the foregoing reasons the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.

