JOHN H. FINFROCK, Trustee, Plaintiff-Appellant, *v.* THE CITY OF URBANA, Defendant-Appellee.—(THE BOARD OF COMMISSIONERS OF URBANA PARK DISTRICT, Intervening Defendant-Appellee.)

Fourth District   No. 13152

Opinion filed June 17, 1976.

Franklin, Flynn & Palmer, of Champaign (Charles L. Palmer, of counsel), for appellant.

Jack Waaler, of Waaler, Evans & Gordon, and Harold A. Baker, of Hatch & Baker, both of Champaign, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff John H. Finfrock, as trustee, brought this action in the circuit court of Champaign County against defendant City of Urbana. The Board of Commissioners of the Urbana Park District was allowed to intervene as party-defendant. Plaintiff's complaint prayed that the Urbana zoning ordinance be declared void and unenforceable insofar as it imposed an R-1 (single- and two-family residential) zoning classification on plaintiff's property and prevented plaintiff from constructing and operating a commercial shopping center thereon, and that the City be enjoined from interfering with the development of the property for the requested use. The trial court entered judgment in favor of defendant, and plaintiff appeals. The sole issue on review is whether the judgment of the trial court is contrary to the manifest weight of the evidence. We find it not to be and affirm.

The facts are not disputed. In 1961, plaintiff John H. Finfrock, as trustee under the will of Isabella Barr, acquired title to a parcel of land in Urbana totaling approximately 6.334 acres. The property is located at the corner of University Avenue and Broadway. The south 200 feet of the property is zoned I-1 (light industry) and is used for commercial purposes including an automobile dealership and garage. The northern portion of the tract, consisting of approximately 4.07 acres, is zoned R-1 and is and has been vacant for some time. The zoning dispute concerns the northern portion of the land. Plaintiff would use the area for construction of a 45,000 square foot shopping center consisting of an IGA supermarket and several smaller stores with a paved and lighted parking area for 312 cars. In 1972,

plaintiff unsuccessfully petitioned the City of Urbana to rezone the entire tract either I-1 or B-2 (central business), which would permit the construction of a shopping center. He then filed the present suit. At the time the action commenced, the Urbana zoning ordinance provided for 12 classifications: R-1 is the third most restrictive; B-2 and I-1 are the third and second least restrictive, respectively.

At the trial, plaintiff presented evidence relating to the existing uses of property surrounding the subject tract. The area to the east is zoned I-1, and holds a Holiday Inn Motel with bar and restaurant facilities; as noted, the southern 200 feet of the subject property is zoned I-1, and is used for commercial purposes; to the south across University Avenue the zoning is also I-1, and a large department store is located there; to the southwest across Broadway, a service station and an apartment complex are located in an I-1 zone; to the west and northwest across Broadway is Crystal Lake Park, operated by the Urbana Park District, and consisting of approximately 95 acres; to the north the area is zoned R-1, and consists of modest single-family dwellings. Under a transportation plan prepared about 1970 by the Champaign-Urbana Urban Area Transportation Committee, it is anticipated that sometime before 1985 Broadway will be widened from its present 25-foot width to 30 feet. Land has already been acquired for the widening project. Recent traffic counts on Broadway near Park Street have totaled about 4500 cars per day, while the count on University Avenue near Broadway is about 21,000 cars per day.

Plaintiff also presented testimony concerning former uses of the subject property. The property was the site of a brick factory at about the time of World War I. Beginning the the late 1920's, it was used as a softball park. In the 1940's and 1950's, league play was conducted there six or seven nights a week from May through August. Facilities included overhead lights, loudspeakers, bleachers with a seating capacity for at least 750 persons, and a concession stand. The main entrance to the ballpark was from Broadway. Later, the area was leased by the Urbana Park District as a softball park. This arrangement ended in 1967. Since then, the property has been vacant. None of the property has ever been used for residential purposes.

Plaintiff testified that his attempts to interest purchasers in the property for single- and two-family residential purposes have been unsuccessful. He did not list the property with a broker, but advertised it and discussed it with brokers. He stated that the only interest shown has been in using it for commercial purposes. He has not attempted to have the tract rezoned into a multiple-family residential classification. Three real estate appraisers testified for plaintiff that the highest and best use of the property was for commercial purposes. They estimated that as currently zoned the property (including the portion now zoned I-1) is worth

approximately $300,000. If the entire tract were zoned for commercial usage, the value of the property would increase to between $450,000 and $500,000.

Several witnesses testified for the defendant concerning use of the property for residential purposes. Clyde William Forrest, a professor of regional planning at the University of Illinois, testified that in his opinion the property could be effectively used for a residential development with a duplex design, which would meet the requirements of R-1 zoning. In his opinion, the use most in need of protection in the area adjacent to the subject property is the single-family residence usage to the north. Loretta Cowhig, a planner for the City of Urbana, tesified that from a planning standpoint the best use of the tract would be for residential purposes.

Most of the evidence presented by the defendant, however, concerned the effect of the proposed shopping center on Crystal Lake Park. Crystal Lake Park is approximately 95 acres in size. It is surrounded by residential property except for the Urbana Country Club to the north, Busey Woods and the Champaign County Fairgrounds to the north and northwest, and a parking area for the Carle Clinic and Hospital at the southwest corner. Busey Woods is a 30-acre nature area belonging to the University of Illinois. The Urbana Park District has been negotiating for purchase of the fairgrounds for use as a park. It has also made arrangements to lease Busey Woods from the university.

A master plan for development of Crystal Lake Park has been adopted by the Board of Commissioners of the Urbana Park District. The plan recommends purchase of the fairgrounds for active recreational purposes and leasing of Busey Woods as a nature area. The primary recommendation of the plan is to make Crystal Lake Park a "totally natural resource oriented park." To that end an existing swimming pool would be removed and all internal roads would be eliminated from the park. The part of the park nearest plaintiff's property would be used entirely for passive recreational purposes such as picnicking, boating, walking, and observance of wildlife.

Richard Johns, a park administrator who participated in preparation of the master plan, testified that in his opinion a commercial development such as that contemplated by plaintiff would have a detrimental effect on the park because of the "noise, light, congestion, and traffic." Frank Clements, a landscape architect, testified that the master plan was prepared under his supervision. He stated that in his opinion commercial development of the disputed property would have a degrading effect on the park because it would provide noise pollution, visual pollution, and sulphur dioxide pollution, as well as adding congestion to the roads around the park.

■■ The law in Illinois governing the disposition of challenges to

zoning classifications is well settled. The supreme court recently summarized the pertinent rules in *La Salle National Bank v. City of Evanston*, 57 Ill. 2d 415, 312 N.E.2d 625:

> "As stated in *Exchange National Bank of Chicago v. County of Cook*, 25 Ill. 2d 434, 439-40, 'It is always presumed, in an attack upon an ordinance, that the enactment is valid, and the burden of proving its invalidity falls upon the one who attacks the ordinance. (*Jacobson v. City of Evanston*, 10 Ill. 2d 61.) Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*People ex rel. Joseph Lumber Co. v. City of Chicago*, 402 Ill. 321; *Morgan v. City of Chicago*, 370 Ill. 347.) Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. [Citation.]' " 57 Ill. 2d 415, 428, 312 N.E.2d 625, 632.

A party challenging a zoning ordinance undertakes a two-fold burden. He must prove by clear and convincing evidence that the existing zoning ordinance is confiscatory, unreasonable and arbitrary, and he must also prove that the proposed use is reasonable under all circumstances. (*First National Bank v. Village of Northbrook*, 2 Ill. App. 3d 1082, 1087, 278 N.E.2d 533, 537.) Because we agree with the trial court that plaintiff has not sustained the burden of proving the latter proposition, we need not reach the issue of the validity of the zoning ordinance generally as it relates to plaintiff's property. (See *Schultz v. Village of Lisle*, 53 Ill. 2d 39, 289 N.E.2d 614.) In *Schultz*, the supreme court observed:

> "This court has held that it is appropriate to frame the decree with reference to the record before it, and the zoning ordinance may be set aside only to the extent necessary to permit the specific use proposed. [Citations.]
>
> Although the undisputed testimony may indicate that the proper classification of plaintiffs' property is either 'B' Residence or 'C' Residence rather than 'A' Residence, we need not decide whether the zoning ordinance as it relates to plaintiffs' property is for this reason invalid because none of these three classifications permit the use of property for a gasoline service station. The question which was presented to the trial court and which is before this court is the

reasonableness of permitting the requested use of plaintiffs' property. In testing the validity of the zoning ordinance in this case we are only concerned with the validity of the ordinance insofar as it prohibits this proposed use. The general rules, of course, apply, in that the person attacking the ordinance must prove by clear and convincing evidence that the zoning ordinance is, as to him, arbitrary and unreasonable and without substantial relation to public health, safety, morals, or welfare. [Citations.]" (53 Ill. 2d 39, 42, 289 N.E.2d 614, 616.)

*Schultz* involved, as does the instant case, a plaintiff seeking to have property rezoned for a proposed use prohibited by both the existing classification and a number of intervening classifications. The instant plaintiff therefore has the same burden of overcoming the presumption of validity by clear and convincing evidence as did the plaintiff in *Schultz*.

The basic factors which a court takes into consideration in determining the validity of a zoning ordinance have been set forth on numerous occasions (see *La Salle National Bank v. City of Evanston*) and need not be repeated here. We shall incorporate into our analysis those factors relevant to the record before us.

■■ Illinois courts have long placed paramount importance on the question of whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established. (*Jacobson v. City of Evanston*, 10 Ill. 2d 61, 70, 139 N.E.2d 205, 209.) In this context, plaintiff argues that the subject property takes its character from University Avenue. A review of the record reveals, however, that none of the businesses in the area face the proposed shopping center. All of the businesses front on either University Avenue, the University Avenue frontage road, or Cunningham Avenue. No commercial facilities are presently situated on Broadway north of the corner lot at the intersection of University and Broadway. The only property which faces the proposed shopping area is Crystal Lake Park. Moreover, unless the southern 200 feet of the subject property, which is already being used for commercial purposes, is counted, no part of plaintiff's property fronts on an avenue used for commercial purposes. As noted, the plans for the shopping center do not include the southern 200 feet. It is fundamental that zoning boundaries must begin and end somewhere, and the mere fact that property is adjacent to a district permitting less restrictive use does not render its classification invalid. (*Bennet v. City of Chicago*, 24 Ill. 2d 270, 181 N.E.2d 96; *Wesemann v. Village of La Grange Park*, 407 Ill. 81, 94 N.E.2d 904.) The trial court's finding that the proposed site takes its character from Broadway, not University Avenue or Cunningham Avenue, is thus supported by the record and is not contrary to the manifest weight of the evidence.

Plaintiff argues that the value of the subject property would increase considerably if the area were rezoned, and that the present R-1 classification therefore imposes a financial hardship on plaintiff. Plaintiff also points out that the property has been vacant for some time. The evidence is undisputed that the value of the property would be increased by at least $150,000 if allowed to be used for a shopping center. That fact alone cannot be conclusive, however, because it exists in nearly every case where the intensity with which the property may be used is restricted by zoning laws. (*Liberty National Bank v. City of Chicago*, 10 Ill. 2d 137, 143, 139 N.E.2d 235, 239.) The length of time property lies vacant is a factor to be considered. (*La Salle National Bank v. County of Cook*, 12 Ill. 2d 40, 47, 145 N.E.2d 65, 69.) Plaintiff testified in somewhat vague terms regarding his unsuccessful endeavors to sell the property as zoned. Plaintiff stated that he has "sought offers as zoned" without finding a buyer, that he would sell the property for "anything," if the price were "reasonable," and that he has spoken to brokers who refused to list it for lack of a market. Significant by its absence is any reference to plaintiff's asking price for the property. Without such evidence, we are unable to draw any inference relating the period of vacancy to either the present or proposed zoning classifications.

A municipality may impose reasonable zoning restrictions as necessary for the health, safety, and welfare of the public. (*Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 592, 322 N.E.2d 443, 445.) Defendant introduced evidence that the proposed shopping center would have a detrimental effect on Crystal Lake Park because of the heightened noise, visual, and air pollution, as well as the increased traffic congestion. Plaintiff submits that the contemplated commercial use would not introduce any foreign or new use considering the present commercial activities in the area and the past use of the subject property. Our conclusion that the subject property takes its character from the park and residential zone disposes of the former contention. Although the evidence is uncontroverted that prior to 1967 the tract was used as a brick factory and then as a softball park, we note that those uses preceded the adoption of a master plan for the development of Crystal Lake Park into a natural resource park. The public has a legitimate interest in protecting the planned character of the park, and the municipal authorities may restrict disruptive influences encroaching upon it.

■■■ Our review of the record leads us to conclude that, at best, plaintiff has demonstrated that a difference of opinion exists as to whether the subject property should be rezoned to permit commercial ventures. Zoning is a legislative function, and where there is room for a legitimate difference of opinion concerning the reasonableness of a classification, the finding of the legislative body must be conclusive and remain

undisturbed. (*La Salle National Bank v. City of Evanston.*) The judgment of the trial court, not being contrary to the manifest weight of the evidence, is affirmed.

Judgment affirmed.

TRAPP, P. J., and SIMKINS, J., concur.