THE AURORA NATIONAL BANK, Trustee, Plaintiff-Appellee, *v.* THE CITY OF AURORA, Defendant-Appellant.

Second District (1st Division)   No. 74-231

Opinion filed August 3, 1976.

William J. Foote and Ralph A. Ketchum, both of Aurora, for appellant.

William C. Murphy, Robert B. Hupp, and Gilbert X. Drendel, Jr., all of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The Aurora National Bank as trustee, as the owner of some eight acres of real estate located at the southeast corner of Sullivan Road and Illinois State Route 31 in the northern part of the City of Aurora in Kane County, in 1971 filed suit against that city, seeking declaratory and injunctive relief. After a long trial (820 pages) and a long written opinion (33 pages), the trial court in March of 1974, (1) declared the present zoning of the property (R-4, Two Family Dwelling, with a special use permit as a medical facility) null and void; (2) enjoined the enforcement of said zoning; (3) authorized the use of the premises in accordance with the provisions of B-2, Business District-General Retail, under the City's zoning ordinance; (4) enjoined any interference with such use; and (5) reserved jurisdiction to enforce said judgment.

The City appeals, contending, in substance, (1) that the evidence is not sufficient to establish that the City's present zoning is unreasonable and void as applied to the subject property; and (2) that the evidence is not sufficient to establish that all intermediate zoning categories between the present zoning and that requested by the plaintiff are unreasonable and confiscatory as applied to said property. We conclude that neither contention has merit and affirm the judgment.

The subject property which consists of 8.72 acres, is located at the southeast corner of the intersection of Sullivan Road, also known as Offutt Lane, and Illinois Route 31 in Aurora, Illinois. Route 31 is a north and south four-lane highway which runs through the city and is a main artery for traffic. It runs along the west side of the Fox River at a distance varying from a short block to as much as two blocks distant from the meandering river. A semi-improved road aptly named River Road (dead end), a seldom-used railroad track and a narrow (10 feet to 75 feet) river bank separate the east edge of the property from the river. This latter area is owned by the Fox Valley Park District. The subject property is adjacent

to the north border of the city and the south border of North Aurora which adjoins Aurora on the north.

Until a few years ago, this property was used as a tuberculosis sanitarium treatment facility. For this reason, when the major part of the property was annexed by the City, it was zoned R-4 residence with a special use (the south strip of the property which remains in the county is zoned for commercial use). The property has not been used as a sanitarium since 1970 and indeed the buildings do not qualify under the present State standards for health care type facilities. Temporarily the buildings are used as a work release center for the rehabilitation of convicts.

The property directly to the south of the subject site on the east side of Route 31 is used as a retail outlet for the sale of swimming pools and recreational facilities. Along the south border of plaintiff's property is a warehouse described by the trial court as "something less than beautiful and not much better than ugly."

The property directly to the north of the subject property contains a Toyota automobile dealership and garage. The northwest corner of the intersection has since 1972 changed from a residential to a commercial use; as found by the court, the City of Aurora by certain annexations had guaranteed the eventual use of this residential property as commercial.

Across the highway directly opposite the subject property, is the Mercyville Sanitarium, a hospital and psychiatric facility.

The plaintiff introduced photographs showing the adjoining areas along Illinois Route 31 northward and southward far in excess of a mile in each direction. These pictures depict approximately two miles of commercial area uninterrupted by any new residential development and almost uninterrupted by any residential use. The residential properties are zoned business and have signs in front of them advertising forthcoming development, and some of these residences are actually used for business purposes.

On the other hand, north of the eastern part of the property, near the river is a residential area, containing about eight or ten homes. Also there is a R-1 single-family residential area on the south side of Sullivan Road past the Mercyville property to the west, but there are no homes on the property. At the west end of the Mercyville property and south of it, is mostly an exclusively residential area. This area does not, however, extend all the way to Route 31, terminating instead about a block west; the area between the residential area and Route 31 to the east is zoned B-3 and B-2.

In 1966, the City of Aurora adopted a comprehensive zoning plan. As admitted by the city planner, the decision as to how to zone the area

around Route 31 was not dictated by a theory of good planning but by the actuality of existing zoning and use. Thus, the area bordering Route 31 on the west was zoned for business except for the Mercyville property which was zoned residential with a special use.

East of the highway commencing from the north edge of the old residential area, it likewise "planned" for the then existing business, commercial and industrial uses to and including the northernmost business use which was at that time the end of the city limits and the beginning of county land. The county land extended for a distance of about two blocks and was "planned" by the City for multiple-family development.

Northward of the county land was the subject property. The map as to the subject property is subject to the interpretation that it is not "planned" for at all or that it was planned for its then existing use. At any rate, it is clear that it was not planned for multiple-family development despite the defendant's claims to that effect on appeal.

Subsequent to the adoption of the comprehensive plan, the city, in direct opposition of its own plan, zoned and annexed a narrow parcel of the county land east of the highway as commercial for the convenience of one of the automobile dealerships (Dodge) thus extending northward toward the subject property the commercial development and eroding the county area further.

Other owners of the property in the county, observing the encroachment of business and wishing to take advantage of increasing values of property zoned for business, petitioned for commercial zoning. The Aurora authorities voiced objection because it was inconsistent with its "plan" for multiple-family use. The Kane County authorities by the two-thirds vote required granted the rezonings.

The City then annexed the properties as rezoned and gave them comparable commercial zoning. Indeed the property immediately to the south of the subject property was rezoned from B-2 to B-3 by the City *without a hearing* upon the owner's representation that under the county he was planning to expand the use for warehousing along with his retail sales use.

Not unexpectedly, the plaintiffs, after purchasing the property, petitioned, in 1972, for rezoning to business. (This petition at the suggestion of certain City authorities was amended to request in the alternative part B-2 and part R-5a, a high density multiple-family use.) The City authorities, ignoring their own violations of the plan both in this area and elsewhere in the City, denied the petition in its entirety. That is, it did not grant either the B-2 or the joint B-2 and R-5a rezoning requested nor did it rezone the property totally R-5a although the defendant both

below and on appeal has urged that the property was suitable for R-5a use.

The trial court in a carefully worded opinion summed up the evidence presented at the trial as follows:

"The evidence in this case discloses that there has been no residential development in the area for many years—that the character of existing residential use is deteriorating. It further shows that the area along Illinois Route #31 is characterized solely by commercial development and there is no showing even suggested by the city that B-2 zoning would in any way adversely affect existing business and commercial uses. Further, there was even no evidence offered by the city of substance suggesting that a business use of the property would adversely affect the deteriorating small area of residential development north of the subject property and east of the Toyota garage and adjoining commercial area.

\* \* \*

Some evidence was received of the activities of the City Administration to provide a bypass around the business development already fostered along Illinois Route #31. From this, it was argued that a business use of this property would add to the highway use and require still more expenditure for such purpose. There was no offer of or testimony of additional traffic which might suggest a detrimental effect, and it would seem that the increased use by the development of several hundred feet in the midst of almost 2½ miles of otherwise uninterrupted commercial development would be a minor factor in the total picture. In addition, even the city traffic expert conceded that traffic signals which might be required were already planned for other reasons.

There is neither claim nor showing that the residential classification is necessary to the public welfare or safety from a traffic standpoint or that the proposed use would create such changes as to bear a significant and substantial relation to the public safety.

\* \* \*

Much can be said on the testimony of witnesses. The best witnesses are the adjoining properties—or rather the picture exhibits which tell a story of solid commercial development approved by the City of Aurora."

As we have said, the court then (1) declared the present zoning of the property (R-4, Two Family Dwelling, with a special use permit as a medical facility) null and void; (2) enjoined the enforcement of said

zoning (3) authorized the use of the premises in accordance with the provisions of B-2, Business District-General Retail, under the City's zoning ordinance; (4) enjoined any interference with said use; and (5) reserved jurisdiction to enforce said judgment.

This brings us to the City's first contention—that the evidence is not sufficient to establish that the City's present zoning (R-4, Two Family Dwelling, with a special use permit as a medical facility) is unreasonable and void as applied to the subject property.

■■ In an action to prevent the enforcement of a zoning order as to a particular piece of property, the moving party has the burden of proving by clear and convincing evidence that the application of the ordinance is arbitrary and unreasonable and that it has no substantial relation to the public health, safety and welfare. (*Exchange National Bank v. County of Cook* (1962), 25 Ill. 2d 434, 185 N.E.2d 250.) A presumption of validity always attaches to an existing zoning ordinance (*Jacobson v. City of Evanston* (1956), 10 Ill. 2d 61, 139 N.E.2d 205.) Nevertheless, the purchaser of property after zoning is not barred by his purchase from contesting the validity of the zoning. (*Bolger v. Village of Mount Prospect* (1957), 10 Ill. 2d 596, 141 N.E.2d 22.) And when it was shown that no reasonable basis of public welfare requires the limitation or restriction and the resulting loss in the value of the property, the ordinance fails and the presumption of validity is dissipated. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.) While if room exists for a difference of opinion, the legislative determination is conclusive (*Krom v. City of Elmhurst* (1956), 8 Ill. 2d 104, 133 N.E.2d 1), differences of opinion do not require a finding that the reasonableness of the ordinance is fairly debatable. Rather, the court must determine from all the facts whether the differences of opinion are reasonable and justifiable. (*La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill. App. 3d 1040, 278 N.E.2d 114.) And where the testimony in a trial without a jury is contradictory, the weight to be given to that testimony is a matter for the trial court and its finding will not be disturbed unless manifestly against the weight of the evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65.

We conclude that the trial court correctly determined that defendant's ordinance as applied to the subject property is invalid and void. We agree with the trial court's observation that in submitting proof by all of its expert witnesses that the subject property was suitable for multiple-family use rather than for R-4 uses, the defendant has conceded that the property is not properly zoned. (*First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589, 299 N.E.2d 570.) In determining the validity of zoning, primary importance should be given by the court to the conformity of the zoning restrictions on the subject property with

existing uses and zoning restrictions applicable to surrounding properties (*First National Bank v. County of Lake* (1955), 7 Ill. 2d 213, 130 N.E.2d 267; *Tillitson v. City of Urbana* (1963), 29 Ill. 2d 22, 193 N.E.2d 1; *Mobil Oil Corp. v. City of Rockford* (1972), 8 Ill. App. 3d 649, 290 N.E.2d 7), and to the question whether those uses are uniform and established. (*Tillitson v. City of Urbana* (1963), 29 Ill. 2d 22, 193 N.E.2d 1; *Mobil Oil Corp. v. City of Rockford* (1972), 8 Ill. App. 3d 649, 290 N.E.2d 7.) As in *Tillitson*, "the record here shows neither uniformity nor a long established adherence to the residential classification. Rather, it shows that the intermediate area is interspersed with commercial uses," the city even rezoning one property without a hearing. The subject property is, besides Mercyville, the only property in the area bordering on Route 31 which is zoned residential. It abuts one of the most heavily travelled streets in the city. And it seems clear, despite the claims of the defendant's witnesses, that the subject property gets its character from the many commercial and business uses in the area, both in Aurora and North Aurora.

■■ We therefore conclude that the City's first contention—that the evidence is insufficient to establish that the present zoning (R-4, Two Family Dwelling, with a special use permit as a medical facility) is unreasonable and void as applied to the subject property—is without merit.

This brings us to the City's second contention—that the evidence is not sufficient to establish that all intermediate zoning categories between the present zoning and that requested by the plaintiff are unreasonable and confiscatory as applied to the subject property.

The City begins this argument by citing the First District case of *First National Bank v. Village of Northbrook* (1971), 2 Ill. App. 3d 1082, 278 N.E.2d 533, for the proposition that a plaintiff challenging a zoning is "required to show not only that the current zoning classification is arbitrary and unreasonable as applied to his property but also that every zoning classification between the current one and the one he proposes is arbitrary and unreasonable." We disagree with this proposition.

In the first place, the cited case is distinguishable from the case at bar in that there the court held (2 Ill. App. 3d 1082, 1088) that "the plaintiff did not prove its proposed use of the subject land was reasonable * * *. [Citation.] In fact, plaintiff's evidence shows otherwise. * * *," whereas, in the case at bar, the proposed use is reasonable and proper.

In the second place, no court so far as we can ascertain has, as yet, followed the cited case and several First District cases have declined to follow it. The first is *First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589, 299 N.E.2d 570, where, in affirming a trial court judgment voiding the present zoning and approving the zoning proposed by the plaintiff, the court, at pages 595-596, said:

"Citing *First National Bank of Lake Forest v. Village of*

*Northbrook* (1971), 2 Ill. App. 3d 1082, 278 N.E.2d 533, defendant's second contention is that plaintiff failed to establish that defendant acted arbitrarily and unreasonably in refusing to rezone the subject property to permit plaintiff's proposed use. It argues that plaintiff's burden in this regard entailed proving that other possible alternative zoning classifications would also have been unreasonable and void.

We believe, however, that after proving that an existing zoning ordinance is void as to the property in question, plaintiff's remaining burden is to show that its proposed use is reasonable. (*Sinclair Pipe Line Co. v. Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406; *Mangel & Co. v. Village of Wilmette* (1969), 115 Ill. App. 2d 383, 253 N.E.2d 9.) In *Fiore v. City of Highland Park* (1966), 76 Ill. App. 2d 62, 221 N.E.2d 323, this court stated at pp. 74-76:

'What the plaintiffs are attacking in this court * * * What they must challenge is the validity of existing zoning as applied to their land and not the validity of suitability of any other prior or possible alternative zoning classifications. * * * The most that a court may do after declaring an existing ordinance void as applied to certain property is to find that the specific use contemplated by the owner is reasonable and may be permitted.'

Courts must carefully avoid impinging upon the municipality's power to determine zoning classifications. (*Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, 182 N.E.2d 219.) We also recognize that in some circumstances a plaintiff may prove that existing zoning restrictions as applied are void, but would be unable to prove that a proposed use is reasonable. We do not believe, however, that after determining that an existing zoning ordinance is void, the court, in deciding whether plaintiff's proposed use is reasonable, must consider whether all possible alternative zoning classifications of the subject property also would be arbitrary and unconstitutional. * * *"

The second case is *Stalzer v. Village of Matteson* (1973), 14 Ill. App. 3d 891, 303 N.E.2d 489, where, in affirming a judgment voiding the present zoning and approving the zoning proposed by the plaintiff, the court, at pages 902-903, said:

"Reasoning then from the premise of established invalidity of the existing ordinance, the next problem is whether the specific use advocated by plaintiffs is demonstrated by the record before us to be compatible and reasonable in its application to the subject property. (*Sinclair Pipe Line v. Village of Richton Park,* 19 Ill. 2d 370, 167 N.E.2d 406; *Fiore v. City of Highland Park,* 76 Ill. App. 2d

62, 221 N.E.2d 323.) It is established that plaintiffs were not obliged to carry the matter further and prove the invalidity or unreasonableness of any other alternative zoning classification. (*First National Bank of Skokie v. Village of Morton Grove*, 12 Ill. App. 3d 589, 595, 596, 299 N.E.2d 570, 575, 576.) * * *"

We therefore conclude that the City's contention—that the plaintiff must establish not only that the current zoning is arbitrary and unreasonable but that all intermediate zoning categories between the present zoning and that requested by the plaintiff are unreasonable and confiscatory as applied to said property—is not supported by the cases and is not sound Illinois law.

The City also contends, rather casually, that a category of multiple-family dwellings would perhaps have been more appropriate.

■■ It is clear from the evidence that the imposition of any residential classification would have been unreasonable. The property is located on Route 31, the busiest street in town according to one of the defendant's witnesses. The existence of heavy traffic conditions on a thoroughfare scarcely constitutes an argument in support of a residential classification. (*Hartung v. Village of Skokie* (1961), 22 Ill. 2d 485, 177 N.E.2d 328; *Dalkoff v. City of Rock Island* (1959), 17 Ill. 2d 342, 161 N.E.2d 292.) There are no sidewalks (and at present no traffic lights). Any children would have to be bussed to school. (According to the testimony of one of the defendant's witnesses, neither sidewalks nor schools were a topic in the Plan Commission's determination of this petition.)

In addition, it is manifest that the plaintiff's property is not part of a solid residential district. Rather, it is characterized by the enveloping commercial area both in Aurora and North Aurora along both sides of Route 31 of which it is geographically a component part. "Zoning ordinances restricting a certain area to a residential use have been consistently found to be void where such property is so situated, with relation to a commercial zone, as to render it peculiarly unattractive and of little value for residential purposes." (*Dalkoff v. City of Rock Island* (1959), 17 Ill. 2d 342, 345, 161 N.E.2d 292.) So unless some compelling reason of public welfare or safety exists, the imposition of a residential restriction on the plaintiff's lots must be found to be unreasonable.

Although the defendant relates the presence of some residences to the east and west of the property, it is significant to note that no evidence of depreciating value of these residences or of any other neighborhood property was suggested. No neighbors testified in opposition to the zoning of the property for business. Sister Rita Meagher testified that the rezoning would not affect Mercyville. The testimony of the plaintiff's witnesses was to the effect that none of the neighboring property would be depreciated. What the defendant contends is that the property should

be used for residences since that could encourage the development of a residential area along River Street.

The defendant also contends that the property should remain residential to avoid an increase in traffic and that in addition the Park District's narrow strips of property along the river bank would be adversely affected. The trial court's findings that the evidence failed to show any serious adverse effect, however, are supported by the evidence.

The defendant also argues that the plaintiff failed to show any devaluation of the subject property resulting from the zoning restrictions. However, the court, which was the trier of fact, explicitly found that the appraiser's valuation of the property at $304,000 if used commercially was supported by the other evidence despite his confusion. The defendant's only evidence as to value, as a multiple-family residential classification, was that the property would be worth $25,000 an acre, over $75,000 less. Furthermore, the trial court properly questioned this appraisal since the only "comparable" offered was located in a residential section. Moreover, the testimony of one of the owners of the property that it was impossible to get conventional financing for a development for multiple-family use was uncontradicted.

We therefore conclude that the City's second contention also lacks merit, and that the trial court's judgment was correct and should be and is hereby affirmed.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.