LaGRANGE FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, *v.* ROCK RIVER CORPORATION, Defendant-Appellant.—(ELMER P. BARNES, Counterplaintiff-Appellee, *v.* ROCK RIVER CORPORATION, Counterdefendant-Appellant.)

Second District    No. 80-309

Opinion filed June 24, 1981.

David L. Gomberg, Robert J. Sharfman, and Raymond J. Ostler, all of Gomberg and Sharfman, of Chicago, for appellant.

Thomas B. Cassidy, of Martin, Craig, Chester & Sonneschein, and Kenart M. Rahn, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Following a mortgage foreclosure on the complaint of the LaGrange Federal Savings & Loan Association (LaGrange), the trial court imposed a deficiency judgment of $141,702.97 against Elmer Barnes and the Rock River Corporation (Rock River), granted Barnes' counterclaim for specific performance of his contract with Rock River concerning the mortgaged property, and ordered Rock River to indemnify Barnes with respect to the deficiency judgment pursuant to the contract. Rock River appeals.

The litigation originated in a 1975 sale to Rock River by Barnes of his interest in several subdivision developments, titles to which were held in land trusts. One of the trusts, known as the "Wheaton Trust," held title to real estate encumbered by a mortgage which had been made by LaGrange's predecessor. Barnes encountered difficulties in the funding of the three trusts and entered into a "Contract of Sale and Repurchase" (the Contract) with Rock River dated September 12, 1975.

Under the Contract Barnes sold his beneficial interest in the three trusts to Rock River but retained an option to repurchase. The option terminated without Barnes having exercised it. The contract provided that upon the termination of the option for any reason, Barnes would surrender possession of his residence (not located on the "Wheaton Trust" parcel) within 30 days and that Rock River would assume and pay the taxes, insurance, principal and interest payments on the mortgage as these expenses applied to the various parcels in the trusts.

On July 7, 1976, Barnes sued LaGrange and Rock River in Cook County seeking to have the Contract declared void and unenforceable, while Rock River filed a counterclaim alleging that the Contract was valid and enforceable and seeking to enjoin Barnes from continuing in the possession of his residence. The case was settled pursuant to a settlement agreement and release. An order was entered on January 28, 1977, in the Circuit Court of Cook County dismissing the suit and counterclaim. The agreed order provided that the Contract was valid and enforceable in all respects, that Barnes' option to repurchase had terminated, and that Barnes should deliver possession of the residence to Rock River immediately.

On May 31, 1977, LaGrange filed a complaint in the Du Page County Circuit Court seeking foreclosure of the mortgage on the parcel in the Wheaton Trust. Barnes filed a counterclaim against LaGrange and Rock River alleging that the Contract between Barnes and Rock River caused Rock River to assume the LaGrange mortgage liability.

In November of 1979, LaGrange amended its complaint to seek relief for any deficiency judgment from Rock River as well as Barnes. The mortgage sale at which LaGrange was the successful bidder resulted in the deficiency judgment.

On March 12, 1980, the claim for a deficiency judgment and Barnes' counterclaim for specific performance were tried, resulting in the orders from which the appeal is taken.

Rock River contends that Barnes' counterclaim for specific performance was barred by the Cook County judgment under principles of *res judicata*, or under the theory of "unclean hands"; and that Barnes was barred by the terms of the general release given as a part of the Cook County settlement from relief under his counterclaim. Rock River also contends that the failure of Barnes to give up possession of his residence within 30 days from the termination of his option to repurchase was a violation of a condition precedent to Rock River's assuming any obligation to pay Barnes' mortgage indebtedness; and that, in any event, LaGrange cannot look to Rock River for a deficiency judgment based on a contract as to which LaGrange was not a party nor shown to be a third-party beneficiary.

■■ We must first consider the argument of Barnes and LaGrange that Rock River's defenses of *res judicata*, "unclean hands," release and failure of performance of a condition precedent have been waived by failure to plead them.

Facts constituting an affirmative defense which seeks to defeat a cause of action must be pleaded (Ill. Rev. Stat. 1979, ch. 110, par. 43(4)); and this applies also to raising the issue of a condition precedent (Ill. Rev. Stat. 1979, ch. 110A, par. 133). However, "[a]n objection that an issue was not raised in the pleadings may be waived by the conduct at the trial of the objecting party or by introduction of evidence on the issue." (*Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 518.) In *Pioneer*, the court noted that the objecting party had not objected to the introduction of evidence that plaintiff had a vested right in a zoning classification because of reliance and substantial expenditures and therefore waived the pleading objection. 71 Ill. 2d 510, 518.

Rock River raised all the defenses in its memorandum of law in opposition to the amended complaint and in opposition to the counterclaim of Barnes for specific performance; there is no indication that either

Barnes or LaGrange refrained from introducing relevant evidence as to these defenses due to the pleading defect; the defenses present questions of law based on essentially undisputed facts; and the only objection at trial based on the pleadings was LaGrange's contention during trial that Rock River admitted the legal sufficiency of the complaint by its answer. Barnes stipulated to admitting the release into evidence. The agreed order claimed to have *res judicata* defect was attached to the pleadings early in the litigation. We therefore conclude that the rule of waiver should not apply to the defenses of release, *res judicata* and the claimed failure of a condition precedent. Moreover, the trial court ruled upon each of the issues. However, as to the defense of "unclean hands," we consider that to have been waived as the record is insufficient to meaningfully evaluate the contention and the trial court did not rule upon it.

We will therefore consider the merits of the defenses which we have held not to have been waived.

### Res Judicata

Rock River contends that the agreed order in the Cook County litigation bars Barnes' counterclaim, since the issues in the counterclaim could have been raised in the prior action. We disagree.

■■ An essential prerequisite to the application of *res judicata* is that the second suit involves the same claim, demand, or cause of action. (*Rotogravure Service v. R. W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 525.) A comparison of Barnes' complaint in the Cook County action with his counterclaim herein demonstrates that the causes of action are very different. In the prior suit Barnes sought to have portions of the Contract declared invalid and prayed for damages for, among other things, breaches of duty and misrepresentations by LaGrange and Rock River. The instant counterclaim seeks to specifically enforce the Contract.

■■ One test for determining identity of causes of action is whether the same evidence would sustain both actions. (*Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 624.) The claims raised in the prior suit concerned the relationship and dealings of the parties. The evidence offered there presumably would have primarily consisted of oral and written communications among the parties. The evidence pertinent to Barnes' counterclaim, by contrast, is limited to matters covered by the contract, such as the termination of Barnes' option and his vacation of his former residence. The causes of action therefore lacked the requisite identity. See also *Turzynski v. Liebert* (1976), 39 Ill. App. 3d 87, 90-91.

Moreover, the doctrine of *res judicata* generally applies only to facts and conditions as they existed when the prior judgment was entered. (*La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944,

945.) The prior action which ended in a settlement agreement declaring the Contract valid in all respects did not bar the later action to enforce the Contract.

### The General Release

■■ Rock River argues that the general release executed pursuant to the settlement agreement in the Cook County litigation discharged all claims related to the Contract and thus precluded Barnes' counterclaim. However, the release by its terms applies to past and present, not future, claims.

The release states that Barnes releases Rock River:

> "from all causes of action, claims, demands, and liabilities whatsoever, of whatever kind or nature, known or unknown, whether in rem or in personam, suspected or unsuspected by Elmer P. Barnes and Barbara J. Barnes, which they now own or hold or have at any time heretofore owned or held as against any of the parties hereinabove specified, arising from any matter whatsoever, including specifically, but without limiting the generality of the foregoing, all causes of action, claims demands and liabilities arising out of the subject matter of the action, *Barnes v. 1st Savings of LaGrange Park, et al.*, No. 76 CH 4049 (transferred to Law Division), presently pending in the Circuit Court of Cook County, Illinois, or the Contract of Sale and Repurchase dated September 12, 1975 by and between Rock River Corporation, Elmer P. Barnes and Barbara J. Barnes; * * *."

The intention of the parties controls the scope and effect of a release; such intent is discerned from the language used and the circumstances of the transaction. (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696.) In *Keeran v. The Wahl Co.* (1943), 320 Ill. App. 457, 467, the court interpreted a release to not cover future acts where the language of the release was directed to past actions. The court found that the parties could not have intended that future tortious acts would be covered by the release.

The language of the release here expressly limits its application to claims then held by Barnes. The circumstances in which the release was given, particularly in the context of the agreed order, indicate that the claims being discharged were those attacking the validity of the contract or arising from prior dealings between the parties. The claim presently asserted is in reaction to LaGrange's suit filed after the date of the release. The claim seeks to enforce the Contract, alleging a breach by Rock River which only became material subsequent to the execution of the release.

There is no indication in the record that the parties intended the release to cover subsequent breaches of the Contract. In fact, the opposite conclusion is easily drawn, since Rock River wanted the Contract held

valid. If Barnes were now attacking the validity of the Contract provisions, the release would probably bar his claim. However, the release does not preclude an action to enforce the Contract against later alleged breaches.

## The Claimed Condition Precedent

■ Under the Contract of Sale and Repurchase Barnes was given the right to occupy his residence, located on premises described in the First Arlington National Bank Trust, during the period that the option to repurchase remained in full force providing that he pay all indebtedness, insurance premiums and charges against the real estate. The agreement further provided that:

> "13. Upon the termination of Sellers' option to repurchase for any reason other than their timely exercise thereof pursuant to this agreement, they shall vacate the premises * * * within 30 days from the date of termination, and Purchaser shall then assume and agree to pay * * * [all encumbrances, interest, taxes and other charges against the real estate]."

Rock River argues that the Contract provision requiring Barnes to vacate his residence within 30 days after his option to repurchase had terminated is a condition precedent to its assumption of the mortgages on the parcels conveyed pursuant to the Contract. LaGrange and Barnes deny that the provision is a condition precedent to the assumption of the mortgage. Alternatively, they argue that the condition was fulfilled following the resolution of the Cook County action and that timeliness is not significant; and that Rock River is estopped to rely on the lack of timeliness by virtue of the agreed order and by reason of the fact that Rock River did not treat the provision as a condition precedent.

An eminent authority states: "Where it is doubtful whether words create a promise or an express condition, they are interpreted as creating a promise." (Restatement of Contracts §261 (1932); see 5 Williston on Contracts §665 (3d ed. 1961).) He notes, "words literally appropriate for condition have not been given their natural meaning where the consequence would lead to injustice and a violation of the probable intent of the parties." (5 Williston on Contracts §665 (3d ed. 1961).) It has also been noted that "Where a party claims that his own ambiguous language constitutes a condition precedent to his performance, he is not entitled to such a favorable construction unless it is established that the parties intended to create a condition at the time of contracting." *South Division Credit Union v. Deluxe Motors, Inc.* (1976), 42 Ill. App. 3d 219, 222.

While Rock River contends in this court that the contract is unambiguous, we note, parenthetically, that in the trial court Rock River adduced testimony of its former attorney concerning his understanding of

paragraph 13 of the Contract, over objection of LaGrange and Barnes. This is inconsistent with Rock River's present theory inasmuch as extrinsic evidence is not admissible on the question of the parties' intent if a contract is unambiguous. At any rate, the testimony is highly self-serving and entitled to little weight.

Rock River focuses attention on the word "then" in the last clause of paragraph 13 of the Contract, asserting that it must be considered a term of conditionality. LaGrange and Barnes argue in response that the first clause of paragraph 13, dealing with the termination of the option, is the only condition in the paragraph, and that the duty to vacate the premises and agreement to assume and pay the mortgages are dual predicates of the condition. They basically contend that "then" signifies order of occurrence of events rather than conditionality.

Courts are often called upon to decide whether a contract provision is a condition precedent, the breach of which excuses further performance by the nonbreaching party, or a covenant, the breach of which gives rise to an action for damages but does not excuse nonperformance. The provision at issue is ambiguous on its face as to whether the vacation of the premises within 30 days was a condition precedent or a covenant. Given the presumption of covenant in the Restatement of Contracts, cited above, and considering the surrounding circumstances and probable intent of the parties, we conclude that vacating the premises within 30 days was not a condition precedent.

It is admitted in the pleadings that there were existing mortgage liens on the parcels in all of the three trusts: one to Rock River Corporation on the trust described as "Canterbury Green" in the amount of $440,000; one on the trust described as the "Streamwood Trust" to LaGrange's predecessor in the amount of $675,000; and one to American Heritage Savings & Loan Association on the Barnes' residence in the First Arlington Trust in the amount of about $50,000. It would appear unreasonable to decide that a delay in vacating the residence on one of the trust properties was intended to excuse Rock River's assumption of substantial mortgage liabilities on that and the other parcels as to which Barnes retained no further interest. It would be more reasonable to conclude that vacating the premises at some time was a condition, but that doing so within the 30-day period was a promise or covenant. During the period when Barnes was still in his residence it was obviously not intended that Rock River would pay the mortgage on those premises. However, there is no similar relationship between his leaving the residence and Rock River's assumption of the mortgage on the other trusts.

We also find merit in the argument of LaGrange and Barnes that Rock River waived its right to insist upon timely performance by securing Barnes' agreement to vacate the premises in the Cook County settlement

without asserting his prior breach as excusing assumption of the mortgage, thereby lulling him into believing that the Contract would continue in force. (See *Kitsos v. Terry's Chrysler-Plymouth, Inc.* (1979), 70 Ill. App. 3d 728, 731. See also *Anderson v. Farmers Companies, Inc.* (1980), 87 Ill. App. 3d 493, 497.) In addition, it should be noted that Rock River paid off the mortgage on the Barnes' residence, conduct which is inconsistent with its theory that it did not assume the mortgages by virtue of the Contract.

### Liability for Deficiency Judgment

■■ We then reach the final issue of whether Rock River assumed and agreed to pay the mortgage so as to be liable for a deficiency judgment. It is undisputed that if a purchaser of mortgaged premises has assumed the mortgage and agreed to pay it, he will be liable for a deficiency provided he was joined as a defendant and personally served. See, *e.g., Skolnik v. Petella* (1940), 304 Ill. App. 331, 333, *aff'd* (1941), 376 Ill. 500.

We conclude that, in any event, Rock River has expressly agreed with Barnes to assume the mortgage indebtedness. Between these parties Rock River is charged with the obligation to indemnify Barnes with respect to the deficiency judgment entered against him.

Whether Rock River is directly liable to LaGrange for the deficiency is a more difficult question. Rock River argues that the *Skolnik* rule does not apply for the reasons that Rock River is a purchaser of a beneficial interest in a land trust rather than a grantee from the mortgagor; and that LaGrange has failed to prove it was a third-party beneficiary under Rock River's Contract with Barnes.

We first reject LaGrange's argument that Rock River, by answering the complaint, admitted its legal sufficiency and cannot raise its defenses. Failure to object to a complaint prior to verdict "does not completely waive the question of whether the complaint failed to state a cause of action." (*Swager v. Couri* (1979), 77 Ill. 2d 173, 183.) Although Rock River did at no time move to dismiss LaGrange's complaint, it did raise the issues at trial. This was sufficient to preserve the defenses which went directly to the sufficiency of the complaint to state a cause of action.

But neither defense is well supported in our view. No authority has been offered in aid of Rock River's argument that the fact that the title to the mortgaged property was held in a land trust distinguishes the rule that an agreement to assume a mortgage makes one liable for a deficiency judgment upon foreclosure. The critical factor is not the form of ownership, but whether the party sought to be held liable expressly agreed to assume the mortgage indebtedness in connection with its acquisition of an interest in the mortgaged property. Rock River assumed and agreed to pay the mortgage in its Contract with Barnes and was properly held liable for the deficiency.

The remaining question is whether LaGrange was obliged to prove it was a third-party beneficiary to the Contract in order to recover a judgment directly against Rock River. Rock River again cites no authority in support of its contention. The Illinois cases which allow recovery by the mortgagee against the grantee of the mortgaged real estate do not proceed on a third-party beneficiary theory. (*Skolnik v. Petella* (1940), 304 Ill. App. 331; *Prudential Insurance Co. v. Bass* (1934), 357 Ill. 72; *Conerty v. Richtsteig* (1942), 379 Ill. 360.) One authority states that recovery in such situations

> "* * * is based on the theory that the grantee's promise to pay the debt secured by the mortgage constitutes a contract between him and the mortgagor for the special benefit of the mortgagee." (59 C.J.S. *Mortgages* §418(b) (1949).)

See also *Smith v. General Investments, Inc.* (1963), 246 Miss. 765, 150 So. 2d 862, 864.

■■ Thus, we conclude that the mortgagee need not prove that it is a third-party beneficiary of the assumption contract between a mortgagor and his grantee in order to seek a deficiency judgment against the grantee. It appears sufficient to satisfy the assumption rule of *Skolnik* that the grantee has, in fact, agreed with the mortgagor to assume the obligation. Having done so, Rock River became directly liable for any deficiency along with Barnes. However, as we have noted, between these parties Rock River stands in the position of indemnifying Barnes for any liability imposed against him.

We therefore affirm the judgment.

LINDBERG and VAN DEUSEN, JJ., concur.