CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF COOK, Defendant-Appellee—(The Village of Northbrook, Counterplaintiff-Appellant, *v.* The County of Cook, *et al.*, Counterdefendants and Third-Party Defendants-Appellees).

First District (4th Division)   No. 82—2001

Opinion filed December 15, 1983.

Ross & Hardies, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Jane C. Casey and Matthew M. Klein, Assistant State's Attorneys, of counsel), for appellees County of Cook, William F. Harris, Lena Bruno, and Sidney R. Olsen.

Thomas R. Burney and Jerome S. Schain, both of Schain, Burney and Kenny, and N. A. Giambalvo, of Boodwell, Sears, Sugrue, Giambalvo and Crowley, both of Chicago, for appellee American National Bank and Trust Co.

JUSTICE JOHNSON delivered the opinion of the court:

This appeal arises from litigation challenging the rezoning of a parcel of land located in an unincorporated area of Cook County. The dispute has a lengthy history which involves hearings before the Cook County Zoning Board of Appeals (Zoning Board), the circuit court of Cook County (the County), and an interlocutory appeal to this court in an earlier matter.

The issues raised on appeal are (1) whether the trial court's finding of validity of the rezoning ordinance is supported by the evidence; (2) whether the village of Riverwoods submitted a valid protest against the rezoning; (3) whether the doctrine of *res judicata* bars the trial court's ruling upholding the rezoning and special use; and (4) whether the rezoning and special use constitutes illegal contract and spot zoning.

We affirm.

In its most basic sense, this action is brought by the Village of Northbrook (the Village) to prevent a four-acre tract in an unincorporated area of Cook County, near Lake-Cook Road and Sanders Road, from being developed with a two-story office building.

After denying four earlier petitions for rezoning the subject property, the Cook County Board of Commissioners (County Board) adopted an amendatory zoning ordinance and special use to permit the construction of a two-story office building as of January 22, 1981. The rezoning of the subject property was challenged by the Village in a six-count countercomplaint filed in the chancery division of the circuit court of Cook County following the County Board's approval of the property owner's request for rezoning. The history of this litigation is lengthy and the facts are voluminous. Those facts pertinent to the resolution of this appeal are, here, summarized.

Chicago Title and Trust held legal title to the subject property as trustee. During the period since the original petition for rezoning was filed in 1971, title has been transferred to American National Bank and Trust Company which now holds legal title. Chicago Title and Trust Company no longer has any interest in the litigation. The beneficial interest owner of the property, Joseph Judah, is not a named party to this action.

In 1971, Chicago Title and Trust Company, as Trustee, petitioned the County Board to rezone the property from an R-3 residential district to a B-4 business district. That petition was denied. Chicago Title and Trust Company filed suit in the chancery division of the circuit court of Cook County challenging the County Board's denial of its petition. (Chicago Title & Trust Co. v. County of Cook, 72 CH 4519.)

That complaint was dismissed with prejudice on December 16, 1974.

In 1975, the property owner again petitioned for rezoning from single-family residential to a commercial district. The County Board denied the petition. However, the area was reclassified as an R-4 residential district. That classification was in effect the same as the previous R-3 classification which permitted only single-family use.

In 1976, the property owner again petitioned for rezoning from R-4 (single-family residential) to C-4 (general commercial). Once again the petition was denied. The instant court action was instituted by the Chicago Title and Trust Company against Cook County, following the denial of the 1976 petition for rezoning. The Village of Northbrook was granted leave to intervene as a defendant.

The Village filed a motion to dismiss the Chicago Title and Trust Company's complaint on the ground that the dismissal with prejudice in 1974 of the 1972 suit invoked the doctrine of *res judicata*, thus barring the present suit. The Village's motion was denied.

An interlocutory appeal was brought by the Village and, on September 6, 1978, this court remanded the cause to the trial court and issued an order which stated in pertinent part:

"(2) The order appealed from is reversed insofar as it denies the motion of intervenor-appellant to dismiss plaintiff's complaint on the ground of res judicata. This court holds that the dismissal of plaintiff's complaint with prejudice constitutes a legal bar to further proceedings, subject, however, to the qualification expressed in paragraph (3) here of.

(3) The cause is remanded to the circuit court with directions that a limited hearing be held to determine whether there has been any change in the circumstances of the parties hereto or of the subject property since December 16, 1974, (date of dismissal with prejudice of the previous complaint filed by plaintiff-appellee during 1972), which would in law authorize plaintiff to proceed with the litigation, and then to enter appropriate orders on the resulting finding."

Following this remand to the trial court, legal title was transferred from Chicago Title and Trust Company to American National Bank and Trust Company.

In 1980, the property owner sought and was allowed to file an amended complaint. The amendment limited the request for relief to seeking only those office uses that are normally permitted in a C-4 zoning district. The Village then filed a motion to strike the property owner's amended complaint. Both motions were continued generally by the trial court until the property owner had exhausted administra-

tive remedies.

During the period in which the cause was pending in the trial court, the property owner submitted a new application to the County Board. The application sought a change from the R-4 single-family designation to C-4 commercial designation.

The property owner's application was approved and the County Board rezoned the property to a C-4 commercial area with a special use provision allowing for the construction of an office building. There were certain specifications for the type of building to be constructed, the landscaping and development of its environs.

The Village then filed its countercomplaint in the pending suit (1976 action) challenging the rezoning and special use. This counter-complaint necessarily caused the parties to shift their legal positions. The Village and the County now found themselves to be adversaries. The County and the legal titleholder (counterdefendants) now jointly opposed the Village. Count I of the countercomplaint charged that because the village of Riverwoods had filed a valid protest against the rezoning, the Cook County Zoning Ordinance mandates that a favor-able vote by three-fourths of all members of the Board of Commissioners was necessary for adoption of the rezoning and special use ordinance. Count II of the countercomplaint charged that in reviewing whether the rezoning was reasonable, the doctrine of *res judicata* limited the trial court's review of the rezoning to whether the circumstances of the surrounding property had changed during the time since the initial petition for rezoning was filed in 1974.

Count III of the countercomplaint charged that the rezoning ordinance was invalid because the Zoning Board did not submit its findings of facts and recommendations to the County Board within 90 days after the public hearings. The trial court's order with respect to count III of the countercomplaint is not being appealed by the Village.

Count IV of the countercomplaint charged that the rezoning and special use amounted to illegal contract zoning. Count V of the countercomplaint charged that the rezoning and special use was not reasonably related to the public health, safety and welfare. Count VI of the countercomplaint challenged the County's authority to issue a building permit for the proposed development. The trial court held that count VI was not yet ripe for adjudication. A trial was held on the remaining counts of the Village's countercomplaint.

At trial it was established that following a public hearing on the proposed rezoning, the village of Riverwoods filed a resolution with the Zoning Board protesting the rezoning and special use. This protest was mailed to the following: the secretary of the Zoning Board,

Joseph Judah (owner of the beneficial interest in the property), Mr. Judah's attorney, the president of the County Board, the attorney for the Village of Northbrook, the village manager of Deerfield, the village manager of Northbrook, and at least one other attorney. The protest was mailed within 30 days following the close of the public hearings. However, the Zoning Board noted that it was not received within 30 days after the hearings.

The owner of the property proposed to develop a two-story office building of approximately 44,000 square feet. The proposal included privately maintained sewer and water systems. A large portion of the subject property would be paved. The County Board gave its approval of the development plans.

Wilton Battles, a city planning and zoning consultant, testified for the Village that single-family residential use was the character of the area and that such was the best use for the area. Mr. Battles also stated that on the south side of Lake-Cook Road there was a trend toward office and research development. However, he felt that the tollway acted as a natural buffer separating the two areas.

Steven Lenet, a city planning and zoning expert, testified on behalf of the property owner and the other counterdefendants. His opinion was that the best use for the property would be development of a professional office building. It was his opinion that residential use of the property would be unreasonable.

Gregory Opelka, a professional real estate appraiser, appraised the value of the property on behalf of the Village at $90,000 per acre for commercial use and $41,000 per acre for residential use. Terrence O'Brien, also a professional real estate appraiser, testified for the counterdefendants that the property was valued at $125,000 per acre for commercial use and $35,000 per acre for residential use. Four homeowners from the surrounding area testified that the proposed commercial development would decrease their property value.

There was also testimony that the traffic on Lake-Cook Road had increased from a daily count of 15,000 vehicles in 1975 to 21,400 in 1981. The owner of the beneficial interest in the property testified that the housing market made it unprofitable to develop single-family homes. He also stated that he sought the zoning changes without the authorization of the trustee.

The vice-president and manager of the land trust division of American National Bank testified that the bank does not authorize specific actions of this type with respect to property for which the bank is trustee. Neither does the bank expect to be given reports by the beneficial interest owner regarding zoning actions.

At the conclusion of the trial, the court ruled in favor of the counterdefendants on all counts. The pertinent parts of the court's findings are as follows:

"B. As to all matters arising under Count I, II, III, and IV of the Counter-complaint including all allegations concerning the procedural aspects of the County's decision approving the amendatory zoning ordinance and the special use *** the counter-defendants are entitled to judgment on such Counts on the basis of the pleadings, the testimony and the evidence adduced at trial and on the basis of applicable law.

C. The protest filed by the Village of Riverwoods was properly held invalid by the Cook County Board of Commissioners for the reasons that it was not properly circulated to all parties represented by counsel as required by paragraph 13.15 of the Zoning Ordinance and it reached the Secretary of the Zoning Board of Appeals after the expiration of the thirty (30) day deadline for submitting said protest as required by paragraphs 13.96(2) and 13.15 of the Zoning Ordinance.

D. Neither the doctrines of res judicata, collateral estoppel or the law of the case barred the Cook County Board from acting upon and approving the challenged amendatory zoning ordinance and special use. Notwithstanding, the evidence establishes that there is no identity of parties in this case and the former case. For that reason the doctrine of res judicata and collateral estoppel do not apply.

E. The Cook County Zoning Ordinance does not provide that an amendment or special use are invalid if the Zoning Board of Appeals files its protest later than ninety days after the close of the public hearing.

F. The County Board's action here in approving an amendment and a special use which limits the use of the property to certain uses in the C-4 General Commercial District is not illegal contract zoning.

* * *

J. The County Board's decision is supported by adequate findings; its findings are supported by the manifest weight of the evidence, the County Board otherwise proceeded according to Law. The County Board's decision should be affirmed and the relief requested by the Counter-plaintiff should be denied.

K. Counter-plaintiff's evidence failed to overcome the presumption of validity that the Court must accord to a decision of the Cook County Board of Commissioners when considered

with the evidence presented by the counter-defendants. Accordingly the court finds that the C-4 amendatory zoning ordinance and the special use is compatible with and beneficial to the surrounding area and that the existing land uses and zonings in the area favor the proposed development.

L. Counter-plaintiff's evidence failed to establish that the amendatory zoning ordinance and special use would cause substantial depreciation of nearby property. The Court finds after considering the evidence presented and the credibility of the witnesses that the C-4 special use would have no discernible effect on nearby property values, including residential property values.

M. Counter-plaintiff's evidence failed to establish that the amendatory zoning ordinance and special use would not result in a gain to the public and that the property is unsuitable for the C-4 special use. The Court finds based on the evidence presented that the C-4 special use will result in a gain to the public including the provision of additional services, the generation of more jobs and more real estate taxes.

N. The evidence establishes that the hardship is greater to the property owner from restricting the use of the property to residential uses than the benefit to the public from such a restriction.

O. The location of the subject property at two heavily travelled intersections, the trend of development in the area and the length of time the development in the area took place make the property more suitable for the approved use than for single-family use.

P. For the reasons stated in paragraphs I-P, counter-plaintiff failed to establish that the County Board's decision bears no relationship to the public health, safety and welfare. Based on the evidence presented by the parties, the Court concludes that the C-4 Special Use bears a reasonable relationship to the public health, safety and welfare and provides for the highest and best use of the subject property."

■ The Village contends that the County acted unreasonably and arbitrarily in authorizing the C-4 zoning for commercial development. Further, the property is best suited for residential use, and commercial development would result in a reduction in value of the surrounding residential property. The County action in rezoning the area is unsupported by any evidence of a change in the character of the area or a trend toward commercial development. Therefore, the trial court's

ruling is against the manifest weight of the evidence. We disagree.

In an action to prevent the enforcement of a zoning ordinance, the moving party has the burden of proving by clear and convincing evidence that the application of the ordinance is arbitrary and unreasonable and has no relation to the public health, safety and welfare. (*Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 244, 353 N.E.2d 61, 65.) A presumption of validity always attaches to a zoning ordinance. 41 Ill. App. 3d 239, 244.

Illinois courts have enumerated a number of factors to be considered in determining the validity of zoning ordinances. Included among these are: the extent to which the property values are affected by the particular classifications; the extent to which destruction of the value of the subject property promotes the health, safety, morals or general welfare of the public; the relative gain to the public as compared to the hardship imposed on the individual property owner; and the length of time the property has been vacant as previously zoned considered in the context of land development in the area. *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 949-50, 369 N.E.2d 1363, 1367.

The courts have also considered other intangible factors, and if it appears that restricting the property to a particular use nets only a small gain to the public when compared to the hardship imposed upon the property owners, then the court is fully justified in declaring the restrictive ordinance unreasonable. *La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 950.

In the instant case, the County has already passed an ordinance rezoning the property so that it may be used for a special commercial use instead of the single-family use for which it had previously been zoned. In light of the stated law, we can find no basis on which to do what the Village asks, *i.e.*, find that the rezoning to C-4 is unreasonable, arbitrary and invalid.

The facts show that there is a significant amount of commercial development in the area, similar to that proposed by the property owner. Furthermore, there has been no development of new single-family homes in the area for several years.

There was conflicting testimony by the experts for the parties as to the difference in value if the property is developed commercially as proposed by the owner or if it is developed for single-family use. Not unexpectedly, there was great disparity between the figures offered by the parties. There was also conflicting testimony by the parties' experts as to what constitutes the highest and best use for the property. Again, it was not surprising that the property owner's expert

opined that a commercial use such as that proposed was the best use, while the opponent's expert voiced a contrary opinion.

There was evidence that the owner had been unable to sell the property while it was zoned for single-family use; and development of single-family homes presented an economic difficulty. The property has been vacant for many years. The initial attempt at rezoning was in 1971.

Where the testimony in a trial without a jury is contradictory, the weight to be given to that testimony is a matter for the trial court, and its finding will not be disturbed unless manifestly against the weight of the evidence. (*Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 244, 353 N.E.2d 61, 65.) The trial court's ruling indicates more weight was given to the evidence proffered by the counterdefendants. We have carefully examined the record, and we cannot conclude that the trial court's ruling was against the manifest weight of the evidence.

Furthermore, the evidence does not show a clear pattern of single-family use in the subject area, but, rather, a mixture of commercial uses and single-family dwellings. There is sufficient evidence to support the counterdefendants' argument that there is a trend toward certain types of commercial uses in the area. Clearly, the property does not appear to be part of a solidly residential area. So, unless some compelling reasons of public welfare or safety exists, the imposition of a residential restriction on the subject property could be properly found to be unreasonable. *Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239, 247.

We hold that the trial court's ruling that the amendatory zoning ordinance is reasonable and valid and is amply supported by the record.

We next address the Village's contention that the protest resolution submitted by the village of Riverwoods was valid and, therefore, a favorable vote by three-fourth's of all the members of the County Board was necessary to rezone the property. The Village argues that the provisions of section 13—15 of the Cook County Zoning Ordinance, which requires circulation of the protest resolution to specific parties, were satisfied, thus the Zoning Board improperly disregarded the protest. We reject this argument.

Section 13.15 of the Cook County Zoning Ordinance states in pertinent part:

> "b. The protest is made in writing and submitted to the Secretary of the Zoning Board of Appeals not earlier than seven (7) days after the Zoning Board of Appeals hearing has taken

place, and not later than thirty (30) days after the hearing has taken place, and provided that said written protest is circulated by the protesting party to all parties in the case represented by counsel."

We find no ambiguity in the meaning of the Ordinance. We deem it appropriate to focus on specific language of the Ordinance. The phrase, "submitted to the Secretary of the Zoning Board of Appeals *** not later than thirty (30) days after the hearing has taken place," means what it says. The secretary of the Zoning Board of Appeals must receive the protest within 30 days. We do not construe the phrase cited above to mean that the protest resolution must be mailed within 30 days.

The counterdefendants cite *Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 421 N.E.2d 285, as support of their persuasive argument that all of the technical requirements for a valid protest must be met. In *Thompson,* the court strictly construed the language of the zoning ordinance in making a determination regarding the validity of a protest. We believe that construction to be applicable in this case.

■ If the Board of Commissioners had intended that the ordinance be interpreted as urged by the Village, it could have drafted the ordinance accordingly. As the court in *Thompson* did, we also decline to give the protest provision a broader interpretation than that which appears on the face of the provision. Therefore, we hold that the trial court correctly found that the protest resolution was not *submitted* within the requisite time.

The Village next contends that the challenged rezoning is barred by the doctrine of *res judicata.* In support of this contention, the Village gives a lengthy recitation of the history of the property, the various attempts at rezoning, and earlier litigation involving the same property.

■ The Village does not explain how and why *res judicata* is applicable. Alternatively, it argues that the doctrine of the law of the case also bars the trial court's action and, further, that it limits the trial court's role to making a determination of whether there are changed circumstances which warrant rezoning. The Village argues that there was no proof of a material change in circumstances, thus the trial court's action was improper. We reject this argument.

The essence of the doctrine of *res judicata* is the prevention of relitigation of the same matter between the same parties. (*Mistretta v. Village of River Forest* (1971), 2 Ill. App. 3d 102, 104, 276 N.E.2d 131, 133.) Where a former adjudication is relied upon as an absolute

bar, there must be identity of parties, subject matter and causes between the two actions. (2 Ill. App. 3d 102, 104.) Where facts are alleged in the second action which arose after the termination of the prior litigation and the issue in the second litigation differs from the first, the second suit is not barred by the earlier one.

The record suggests that the principal issue in the earlier litigation dealt with the constitutionality of the County Zoning Ordinance which restricted the use of the property for certain commercial uses. In this case, the Village's countercomplaint challenges the right of the County to rezone the property, allowing it to be used for a certain type of commercial development.

One test for determining identity of causes of action is whether the same evidence would sustain both actions. (*LaGrange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 715, 423 N.E.2d 496, 500.) The right asserted by Chicago Title and Trust Company (the plaintiff in the 1972 action) is not the same as the issues raised in the present case. Further, the doctrine of *res judicata* generally applies only to facts and conditions as they existed when the prior judgment was entered. *LaGrange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 715.

The counterdefendants argue persuasively that this case is not a second challenge to the zoning of property where the previous zoning has been upheld. Rather, the Village is attempting to assert the prior order in which the action was voluntarily dismissed with prejudice as a bar to rezoning the property for uses other than that allowed by the earlier ordinance. Further, the effect of the appellate review of the earlier case was to make the doctrine of *res judicata* applicable insofar as it prevented relitigating the validity of the existing zoning ordinance without any change in circumstances. This does not amount to a bar against rezoning the property.

The parties to the earlier action are not the same as the parties in this case. In the earlier case, Chicago Title and Trust Company was the plaintiff. Title to the property is now held by American National Bank, and the former plaintiff (Chicago Title and Trust Company), which was also the plaintiff in the 1972 action, no longer has any interest in the litigation. Secondly, the participants in the present suit stand in a different position than their counterparts in the earlier suit. In the earlier suit, the County of Cook was the primary defendant, and Chicago Title and Trust Company (which then held legal title to the property) stood in an adverse position to the County. In this case, American National Bank—the legal titleholder—and the County

of Cook are aligned on one side, and the Village is the adversary. Again, the counterdefendants argue persuasively that these changes in the legal positions due to the rezoning make it reasonable for the trial court to have ruled that there was no identity of parties.

The Village's alternate argument that the doctrine of the law of the case bars the trial court's action and limits its role to making a determination of whether there are changed circumstances also fails. We agree with the counterdefendants that no further action was taken by the trial court on the earlier suit. As discussed earlier, the instant litigation does not constitute a continuation or relitigation of the former action. Therefore, the doctrine of the law of the case is inapplicable under these facts. We hold that the trial court's ruling upholding the ordinance in question is not barred by the doctrines of *res judicata* or the law of the case.

The Village next contends that the rezoning and special use constitutes illegal contract and spot zoning. The Village asserts that the County has agreed to the rezoning of the property in return for the property owner's promise to abide by certain restrictions on development of the property. The rezoning and special use restricts the use of the property in a manner not consistent with general C-4 commercial zoning. The Village concludes that illegal contract zoning is clearly shown by these facts.

The Village advances the alternate argument that the rezoning constitutes illegal spot zoning. It argues that no substantial evidence was proffered by the counterdefendants to justify the rezoning.

■ We find nothing in the record to support the Village's contention that a deal was illegally struck between the County and the property owner before the property was rezoned. Secondly, the County zoning ordinance clearly permits special uses such as the one which the Village asserts as probative of illegal contract zoning.

The counterdefendants cite section 13.10—9 of the Cook County Zoning Ordinance, which provides in relevant part:

> "Prior to the granting of any special use, the Zoning Board of Appeals may recommend, and the Board of Commissioners may impose, such conditions and restrictions upon the establishment, location, construction, maintenance, and operation of the special use as deemed necessary for the protection of the public interest and to secure compliance with the standards and requirements specified in Section 13.10—7 of this Article."

They are persuasive in their contention that the Ordinance gives the County the authority to impose conditions on special uses in zoning and rezoning as was done in this case.

We believe the record amply supports the trial court's finding that the rezoning and special use did not constitute illegal contract or spot zoning. We find that the trial court was correct in its finding that the rezoning and special use was amply supported by the record. Further, the burden of proof was upon the Village to establish that the rezoning and special use was arbitrary, unreasonable and not related to public health, safety and welfare. The Village did not meet its burden.

■ We adhere to the principle that where there is room for legitimate difference of opinion concerning the reasonableness of the classification effected by an ordinance, or amendment thereto, the courts will not interfere with the legislative judgment. *Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 576, 421 N.E.2d 285, 297.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P.J., and LINN, J., concur.